# APRIL TERM, 1874.

## J. F. Cunningham v. The State.

1. CRIMINAL LAW—ATTEMPT TO COMMIT A CRIME.—The doctrine of attempt to commit a substantive crime, is one of the most important, and at the same time the most intricate titles of the criminal law. There must be an intent to commit a crime, and an act done towards its consummation. So long as the act rests in bare intention, it is not punishable; but immediately when an act is done, the law judges not only of the act done, but of the intent with which it is done; and if accompanied with an unlawful and malicious intent, though the act itself would otherwise have been innocent, the intent being criminal, the act becomes criminal and punishable. The word *attempt* signifies both the act and the intent with which the act is done. The intent gives color to the act to the extent of making, under the circumstances, an act indictable or not, according as the intent is greater or less in evil.

2. SAME—ATTEMPT TO FORGE AUDITOR'S WARRANTS.—Section 2594 of the Code of 1871 provides that if any person shall falsely or fraudulently make, forge, or alter any writing, being, or pretending to be, an Auditor's warrant on the State treasury, with intent to defraud the State, he shall be guilty of forgery. Section 2887 provides that any person who shall design and endeavor to commit any offense, and shall do any overt act towards the commission of the same, but shall fail therein, or shall be prevented from committing the same, on conviction thereof, shall be punished as provided by the statute.

3. SAME—CASE IN JUDGMENT.—In an indictment for forgery, it should state who was to be defrauded by the forgery, and inasmuch as this is an indictment for an attempt to forge Auditor's warrants on the State treasury, the indictment should have charged that the attempt to forge said warrants was with the intent to injure and defraud the State. When the intent, mentioned in the statute, is to defraud any particular corporation, it must, of course, be so laid in the indictment, and a failure to do so, as in this case, is a fatal defect.

Error to the circuit court of Hinds county. Hon. Geo. F. Brown, Judge.

The defendant, J. F. Cunningham, was indicted by the grand jury, at the September term, 1872, of the circuit court

of Hinds county, for an attempt to forge Auditor's warrants on the State treasury, and at the same term of the court the defendant was arraigned and filed a demurrer to the indictment, and sets up the following causes of demurrer, to-wit:

1. Said indictment shows no offense under the statute; does not aver that defendant received said box with knowledge or information of its contents, or that he received the same with intent to fill up said blank warrants, and to use said seal thereon in order to forge Auditor's warrants, or to do any illegal act; does not aver any intent to forge such warrants.

2. Such alleged receiving and taking into possession was not an overt act towards the forging of such warrants, within the meaning of the statute.

3. The alleged receiving and possession of said box is not apparently an attempt to forge anything, and there are no averments to show an attempt to forge.

4. An attempt to forge or counterfeit instruments only purporting to be Auditor's warrants, is no offense.

5. It is not shown there was any attempt to injure or defraud the State, or any person or corporation.

6. And for other causes, etc.

And at the same term of the court the demurrer was overruled, and the defendant pleaded not guilty, and the case was tried by a jury, at the January term, 1873, and the Honorable E. S. Fisher, by interchange, presiding, the jury found the defendant guilty.

On the trial of this case,

*L. C. Gunn,* witness for the State, testified:

That during the month of August, 1872, he was agent of the Southern Express Company, and during that time in charge of its office, at Jackson, Mississippi; that on the 10th day of August, 1872, the defendant received from said express office a certain small box, which said box was shipped by the Augusta, Georgia, route, through said company, from the city of New York, addressed to "William Cart-

wright, care of J. F. Cunningham, Jackson, Mississippi;" all
charges thereon had been paid in New York. It appeared
by the way-bill accompanying said box, that for some cause
not stated, said box had been delayed one day at Augusta;
Georgia, and was received one day behind the usual time;
and although it appeared to be well closed and in good con-
dition, the witness, as a precaution to protect the company
from possible loss, pried off the top of said box to see if its
contents were damaged; on so opening the box and inspect-
ing its contents, witness found therein two books (in form
of a bound check book) containing, each, say five hundred
blank warrants of the Auditor of Public Accounts of the
State of Mississippi, each in form and substance as follows,
to-wit:

> THE STATE OF MISSISSIPPI,
> AUDITOR'S OFFICE.
>
> To the State Treasurer:
> Pay to ............................................................or order,
> the sum of.........................................................dollars,
> on account of.....................................................Department,
> and for so doing this shall be your warrant.
> Given under my hand and seal of office, this.........day
> of...........................A. D. 187.....
>
> *Auditor of Public Accounts.*
> Registered by
> *State Treasurer.*

He also found in said box a new, common sized press for
seals, with a seal purporting to be the seal of said Auditor's
office, also a hand stamp with a plate attached, on which
was engraved, in form for stamping, the name, "H. Mus-
grove;" also, a small tin plate therein, in which was a
small phial of ink, a small brush and a pad, material con-
venient for use in stamping the name of said Musgrove
upon paper, also an old horse-shoe. He nailed up the box
with the articles in the same, securely. On said day defend-
ant called at the express office in the morning for said box,

and the same was delivered to him by a clerk of said company, in the said office.

Defendant took the box in his hands, carried it out, called a dray and placed the box thereon, at which point of time the defendant was arrested by Mr. Junkermann, who placed said box in the care of witness, who kept the same carefully and exclusively in his possession until it was taken by him in person and delivered at the office of the Governor of said State, where it was again opened, and the contents found therein as before stated. Defendant had called for the box two or three times before it arrived at the express office.

Defendant asked witness to send the box, when it came, to his residence, at Dr. Swann's, on State street, which witness refused, because it was beyond delivery limits. That before the box arrived, he had been warned of its fraudulent contents, and that defendant was to get it. Defendant seemed anxious about the box.

*Cross examination:* It was not the number of calls, nor the manner of calls for the box that induced him to say that defendant seemed anxious about the box, but that witness had private reasons for saying so. Witness considered a call at six in the morning, an unreasonable time to call for the box, as the office was not open for business until 9 o'clock in the morning.

Witness found in one of said books, one of the blank warrants cut from its place (as bound in said book), which had been filled up to this extent, namely: the payee John Watts, the amount $740, on what account, the legislative department, date April 7, 1872, and the apparent signature of the Auditor, H. Musgrove. Said warrant fitted the place in said book, from which it had been cut. This writing was read to the jury.

*A. J. Adkinson*, testified:

Substantially the same as stated by Gunn.

*H. Musgrove*, testified:

That in said month of August he was, and now is, Auditor of Public Accounts of the State of Mississippi, that he had never ordered the printing, or engraving of said blank warrants, nor had he ordered said press, or said seal, or said hand stamp of his name; that said blank warrants were forged, and were a close imitation of the blank warrants then in use in his office, for drawing Auditor's warrants on the State Treasurer in August last, and said seal was forged, and a close imitation of the public official seal of his said office, and his name on said stamps was a forgery, and a close imitation of his own signature on genuine warrants, and both seal and stamps were well calculated to deceive the public, and said blanks could be distinguished from the genuine. Witness was present at the opening of the box in the Governor's office, and proved the contents thereof in like manner as witness Gunn.

*Julius Junkermann*

Also testified to the arrest of defendant, the seizure of the box, placing it in charge of Gunn, the removal to, and opening it in the office of the Governor, and to the contents, as stated by Gunn; that a short time previous to the arrival of said box in Jackson, he had received a telegraphic dispatch from the city of New York, stating that said box, containing said contents (as herein described), addressed to Wm. Cartright, care of defendant, had been sent by express, from that city, to Jackson.

*Mr. Ford*, testified:

He was employed in the United States Marshal's office, in Jackson; that defendant had been employed in said office, and witness had often seen the writing of defendant, was well acquainted with his hand-writing, and thereupon, the Attorney for the State, handed to witness a certain letter purporting to be signed by H. Musgrove, Auditor of State, and addressed to Wm. Patterson, Esq., which letter is in these words and figures, to-wit:

VOL I—44

JACKSON, MISS., April 22, 1872.

WM. PATTERSON, ESQ.—*Dear Sir :* Be kind enough to go to some good printing establishment in your city and get me a book containing 1000 blank warrants to duplicate the inclosed. I have, heretofore, had all my work done in Memphis, but in consequence of the enormous prices I have to pay there, I concluded to try New York. If the work you get done is reasonable I will send an order, in about two weeks, for $2000 worth of printing.

Respectfully,

H. MUSGROVE, Auditor of State.

Witness states that, in his opinion, said letter was in the hand-writing of said defendant, but witness was of opinion that the signature thereto was not the hand-writing of defendant. The said letter was read to the jury.

*H. Musgrove,* re-called, says :

He never wrote or signed said letter, that the same was a forgery, that he never had any printing or engraving done in Memphis for his office, had all such work done in the city of New York.

*Mr. Loomis,* testified :

That he was, and had been for some months, Superintendent of the Penitentiary of Mississippi, that on Sunday, say, two weeks ago, the defendant, who was then confined there, had sent for him, and when witness went to defendant, defendant requested him to send for Governor Powers to come to see him; Governor Powers was sent for and came same day, was conducted to an office room in said Penitentiary, the prisoner was brought out of his cell, to the Governor, witness was present during the whole interview between them.

*Governor Powers* testified :

That, in the interview, defendant spoke of his wife, child, and parents, and exclaimed that he was rightfully there, and

wanted to make a clean breast of it, and had determined to plead guilty. This was before witness had made any promise or pledge to defendant.

Here the State closed, and defendant introduced

*Michael Fay*, who testified:

That he had known defendant in New Orleans, and in Jackson. Knew him well; knew his hand-writing, and in his opinion the letter to Patterson was not in defendant's hand-writing.

The district attorney called

*W. G. Walker*, who testified:

That witness and defendant had been engrossing clerk's in the Mississippi legislature in 1872; wrote at the same table daily; examined and became acquainted with defendant's hand-writing. Witness examined the letter to Patterson, and said, that in his opinion, it was in the hand-writing of defendant.

This was all the testimony in this case.

The defendant moved the court to set aside the verdict and grant him a new trial; which motion was overruled, and he excepted, and sued out his writ of error.

The plaintiff in error assigns for error the following:

1. His demurrer to the indictment was overruled; which should have been sustained.

2. The court erred in giving each of the three charges for the State.

3. The court erred in refusing to give the several charges asked for defendant, and refused by the court, viz: Charges 5 and 8: and erred in giving the charges prepared by the court and given in lieu of them.

4. The court erred in overruling his motion for a new trial, and in refusing to set aside the verdict and grant him a new trial.

5. The court erred in overruling his motion in arrest of judgment.

6. The court erred in permitting the witness, Gunn, to prove when and how often defendant had called for the Cartright box before its delivery, and in overruling objections thereto.

7. The court erred in permitting the State to ask, and the witness, Gunn, to answer, whether, and how, he had before been warned, as to the contents of said box, etc., and in admitting like proof by Adkinson and Junkermann.

8. The court erred in permitting the State to read in evidence the warrant stated by the witness, Gunn, to have been found in said box, and filled up payable to John Watts.

9. The court erred in admitting in evidence the letter purporting to be from Musgrove, Auditor, to Wm. Patterson, spoken off by witness Ford.

*George L. Potter*, for plaintiff in error:

To test the sufficiency of the indictment, we look to the statute declaring the crime of forging Auditor's warrants, and to the statute in relation to *attempts* to commit crimes. By the Code, "If any person shall falsely and fraudulently *make, forge, or alter*, such a writing, with intent to defraud the State, or any person, he shall be guilty of forgery." Code 1871, § 2594.

The crime is the false and fraudulent making, forging, or altering, of such a writing, with intent to defraud. The offense cannot be committed without the application to *pen*, type and ink to paper. The act of forgery consists in such application of such implements and material with such evil intent, in order to the making of a full similar warrant, or the alteration of such a warrant. One cannot commit forgery by the mere act of receiving a box, and carrying it away, even though such box be full of implements and material, prepared and intended for the work of forgery. Such taking and bearing off the box, is not, and cannot be of itself, an act of *making, forging, or altering*. It is not the application of pen, or type, or ink to paper, which are necessary to an act of forgery.

The Code provides that "Every person who shall design and endeavor to commit any offense, and shall do any overt act towards the commission thereof, but shall fail therein, or shall be prevented from doing the same, shall be punished," etc. Code, § 2887. Such is the attempt made punishable by the statute. To apply it to the matter of forgery, there must be, at the time of the alleged attempt, " a design" to forge; and by the act itself, an " endeavor" to forge, and an " overt act" done " towards the commission" of forgery. The " overt act" must be of such a kind, that if it did not " fail," or was not " prevented," the forgery would, by such act, be committed. It is impossible to mistake the kind of " overt act" intended by the statute, namely: Such an act as would accomplish the intended purpose, but for the fact of " failure" or prevention." A familiar illustration is where a person intending to kill, shoots at another and misses him, or when attempting to discharge a loaded weapon at another, he is prevented from shooting, or the weapon fails to discharge.

In this case it is not charged that the prisoner had any connection with the preparation or procurement of the box and its contents. The mere act charged, is that he *received and took possession of the box* thus filled with such materials. It is not charged that he procured them to be prepared or made, but only that he " did receive and take possession" of the box and its contents. It is vain to say this was an " overt act" of forgery, or that the receipt of the box and contents was an " endeavor" by such mere receiving to forge. The force of this position is clear, when we consider, that so far as the indictment shows, the prisoner did not know what was in the box.

The indictment itself admits that this receipt of the box was not an overt act of forgery, but only an act " towards the commission of the crime." This act was not of itself even an " endeavor" to forge, but was at the most, only an act done in the course of *preparation* for a future act of forgery; the paper, pen, type and ink must first be procured, before

any overt act of forgery could possibly be done. In the course of his proposed work of forgery, the prisoner would need food and clothing; not to do the act of forgery, but for his support and comfort during the work; and the legal effect of this indictment will not be altered if we substitute a box of supplies, or a trunk of clothing, in lieu of this box of implements and material. Let the change be made, and the insufficiency of the indictment will be manifest. In cases of this sort, the rule of law is plain. The indictment must aver " some *act done*," of such a nature as to constitute an attempt to commit the offense. 6 Grat., 675. "There must be undoubtedly *present ability* to perpetrate the offense." State v. Wilson, 30 Conn., 505. And the attempt must be an *act done* with intent to commit the crime which is adapted to the perpetration of it. Ib., 506.

" It is essential that the act of endeavor should be *intrinsically adapted* to *effect the purpose*, and in order that the court, and the accused, may see that it is adapted, it should be specially stated" in the indictment. Ib., 504.

Mr. Bishop states it as admitted doctrine, " that whatever a man's intent may be, he is not indictable unless there is some adaptation, real or apparent, in *the thing done* to accomplish the thing intended. Undoubtedly the act must be a commencement of execution, and if it is not of a *nature* which could, under any circumstances, and however far carried, *do execution*, it cannot be said to be a commencement of execution, or, consequently, to form any part of an attempt." 1 Bishop Crim. L., § 738.

" The act done must have some *inherent tendency* to accomplish the intended wrong. Where it has none, it does not approach sufficiently near the result to be worthy the law's notice." Ib., § 769.

"The intent and the act must exist together simultaneously." Ib., 771.

The prisoner may have had a general intent, but, by the act of receiving the box, he did not attempt to forge, nor

did he intend by that act and at that time, in the express office or in the street, then and there to forge State warrants.

"The intent and the present ability must be conjoined." State v. Wails, 8 Ind., 524.

"The act done which is relied on as amounting to an offense, must be one *proximately connected* with the final illegal object. There is a great difference between preparations antecedent to the commission of an offense and an attempt to commit the offense." 1 Lead. Crim. Cas., 7.

Acts remotely leading towards the commission of a crime cannot be considered as attempts to commit it. Ib., 8.

"The attempt contemplated by the statutes must be manifested by acts which would end in consummation of the particular offense, but for the intervention of circumstances independent of the will of the party." The People v. Murray, 14 Cal., 159. See, also, Lovett v. The State, 19 Texas, 174; Regina v. Taylor, 2 Lead. Crim. Cas., 172; Roscoe's Crim. Ev., 284; Reg. v. Merideth, 34 E. C. L., 539; 2 Arch. Crim. Pl. and Pr., 273; Vaughan v. The State, 3 S. & M., 554–5; Reg. v. Lewis, 38 Eng. C. L. Rep., 207; Reg. v. St. George, 38 Eng. C. L. Rep., 193.

Care must be taken to distinguish between a common law offense and a statutory offense. In the latter class of cases, the act charged must, according to the adjudged cases, have been a still more direct attempt to commit the offense than would have been necessary to render an act indictable at common law, as tending towards a common law offense. 1 Lead. Crim. Cas., 8.

A disregard of this rule has sometimes caused a misapplication of the decision in Reg. v. Roberts, 33 Eng. Law and Eq., cited in 1 Bish. Crim. Law, § 522, and in 2 Lead. Crim. Cas., 171, and Ros. Crim. Ev., § 285. But the case itself, as quoted by Bishop, very clearly recognizes the distinction.

It was a charge attempting to counterfeit Peruvian coin. The prisoner had procured dies for that purpose, and he *intended* to make a few coin to try the machine and then send it to Peru to be worked. Per. Jervis, J., "This was

not *an attempt to commit a statutory offense*, as was the case
in Regina v. Williams. 1 Den., 39. *No doubt, if that were
the case, this conviction must have failed*, for here there was
*no direct attempt to coin;* but this was an indictment
*founded on a criminal intent*, coupled with an act. "The
case of statutory attempts to commit felonies is *very differ-
ent;* there, to support a conviction, proof must be given
of an attempt to do the very criminal act." 1 Bish. Crim.
Law, § 522.

There is a distinction made by Jervis, J., between
Roberts' case and Williams' case. One is an attempt to
commit a common law offense—a misdemeanor; and the
other an attempt to commit a statutory offense—a felony.
Now, test this case of Cunningham, by these two cases.
"He received and took possession of the box" containing
the implements and materials for forgery, *nailed up* within
it. In Williams' case, there was an intent to murder with
arsenic. The poison was procured and delivered to another
to be administered, and directions were given how to admin-
ister it, and yet the judge held that this was not proof of
an attempt to commit the statutory offense. Roberts pro-
cured false dies, with intent to make counterfeit Peruvian
coin—a misdemeanor at common law. His conviction was
expressly, on the ground that he had attempted to commit a
common law offense, whilst it was admitted that it could not
have been sustained if such an attempt had been a statutory
offense, because, as Park, J., said, "there was no proof of an
attempt to do the very criminal act." Cunningham received
the box from the express office, and immediately carried it
and placed it upon a dray near by, and was at that moment
arrested; the box was nailed up; and such is the plain
inference from the indictment. He did not, by so receiving
the box, attempt thereby to forge any warrant, but plainly,
if he intended to forge at all, his purpose was to have the
box transported to some proper place, and thereafter to at-
tempt the act of forgery. Our statute is limited to cases
where a person "shall design and *endeavor to commit* an

offense, and shall do any overt act towards the *commission* thereof, but shall fail therein, or shall be prevented from committing the same," and in this case they must show an *endeavor* to *forge* made by the prisoner at the time he was " prevented," and he must then and there have done some overt act towards the commission of the actual forgery, for that is the offense, in the " committing " of which he is, by supposition of the statute, " prevented." The prisoner was but interrupted in' the work of " preparation," and not " prevented " in *the act* of forgery.

*Johnston & Johnston,* for the State :

The first error assigned is, that the court below erred in overruling the demurrer to the indictment. The demurrer sets up the following grounds :- 1. That the indictment does not aver guilty knowledge of the contents of the box he had received, nor does it aver that he intended to use the contents thereof for committing forgery of State warrants. 2. That receiving the box was not of itself an overt act. 3. That the reception of the box was not an attempt to forge. 4. That an attempt to forge instruments only *purporting* to be auditors' warrants is no offense. 5. That the indictment does not show that there was an attempt to injure or defraud the State or any person.

Several of these grounds of demurrer are mere *arguments* on the facts of the case, out of place in the demurrer, however proper they may have been when addressed to the jury; but when we come to look at the statute, and to the indictment, we find that the indictment is good in every respect. It is averred that the plaintiff in error took possession of the box " *towards* the commission of said crime," but was intercepted, etc. ; and surely when a person makes all necessary preparations for effecting a forgery, and has all the necessary implements in his possession, he has committed an overt act.

The whole evidence makes it manifest that plaintiff in error would have consummated this extended forgery but

for the interference of those who captured the box and arrested him. The demurrer to the indictment was properly overruled.

The third error assigned is, the action of the court below .in refusing to give for plaintiff instructions fifth and eighth, and in giving one other instruction drawn by the court, in lieu thereof. We can see no ground of complaint as to the instructions for the defense. Eleven instructions were asked for, and *nine* of them were given. Two being objectionable, were refused, and one drawn by the court was given in lieu of the two refused. The theory of defendant's rejected instructions is, that plaintiff in error, by taking into his possession, from the express office, the box directed to his care, he did not thereby commit any overt act. The theory of the single instruction given by the court, is, that it is sufficient for conviction if the jury believe, from the evidence, that defendant took the box and its contents into possession with the design afterwards to fill out the blanks, impress the Auditor's seal and signature, so as to give the documents the similitude of State warrants, and to utter the same, and was only prevented from doing this by the seizure of the box and its contents. This is the rational and true theory of what constitutes an overt act. The language of the statute settles this. "Any person who shall design and endeavor * * * * and shall do any overt act." Rev. Code, 1871, § 2886.

Was not the reception of the box, and placing it on the dray, to be carried to Swann's residence, one of the necessary "overt acts" to the forgery ; for, if the box, with the implements, were not taken into possession, the forgery could not have proceeded. The next assignment of error is, overruling the motion for a new trial. As the grounds for this assignment have (some of them) already been considered, and as all the other grounds of the motion will presently present themselves, under distinct assignments, we say nothing more now than has been said on the fifth assignment of error. Gunn, the express agent, and witness

for the State, was asked whether or not and how often plaintiff in error had called at the express office for said box previous to the day of delivery. This question was answered by permission of the court below, and over the objections of plaintiff in error. Witness answered, that he had called once or twice before its arrival, and had called at 6 o'clock for it on the morning of its delivery, and three hours before the regular office hours. This action of the court is now insisted upon as error. We submit that the evidence was properly admitted; that the anxiety of plain-tiff in error to get this box in his possession, as evidenced by his numerous calls for it, in season and out of season, was clearly admissible as part of the *res gestæ*, and as one of the circumstances tending to prove the offense charged. Forgery, or attempts to commit forgery, is one of those offenses which is usually, from the very nature of the offense, *proven by a chain of circumstances.* Plaintiff in error complains, seventhly, That it was error to permit Gunn, Junkermann and Atkinson (State's witnesses), to state whether they had been informed that *such* a box as this was on the way from New York to Jackson, and to the care of plaintiff in error. The evidence is not objectionable. It really made no difference whether the express agent and Junkermann and Atkinson had been so informed or not. They proved the reception of the box by plaintiff in error, and its damning contents. A statement that they were advised of the contents of the box before it came, could not affect, one way or another, the question of his guilt.

It is *lastly* assigned for error, that the court erred in per-mitting the letter *purporting* to have been written by H. Musgrove, to be read in evidence, by the State. That is a letter addressed to Wm. Patterson, of New York, ordering the blank book of warrants found in the box. The letter was admitted because the weight of the proof clearly is, that the *body* of it was written by plaintiff in error. The witnesses Ford and Walker, both prove the hand-writing. Musgrove, the Auditor, proved that *he* did not write or sign

the letter. Opposed to this, was the statement of one Fay, witness for plaintiff in error, who said he knew the hand-writing of plaintiff in error, it was witness' opinion that said letter was *not* written by plaintiff in error. So we say that the proof of hand-writing of the letter was well established. If it be argued that the letter ought not to have been read to the jury, although the hand-writing was fixed on plaintiff in error, we reply, surely the letter was properly one very pregnant fact indicative of guilt. Strike the letter from the record, and still the guilt was well proven. And addressing ourselves to the point made as to the sufficiency of the evidence to uphold the verdict, we say that the evidence, as a whole, is absolutely convincing, and hence the verdict on the facts in proof, rest upon an immovable foundation. The judgment below, we submit, must be affirmed.

PEYTON, C. J., delivered the opinion of the court:

J. F. Cunningham was convicted, in the circuit court holden for the first district of Hinds county, of an attempt to commit the crime of forgery, on an indictment charging that he, the said J. F. Cunningham, on the 10th day of August, 1872, with force and arms, in the first district of Hinds county, designing and endeavoring to commit the crime of forgery, feloniously did then and there receive and take possession of a certain box, containing a large number of fraudulently printed papers, purporting to be blank warrants of the Auditor of Public Accounts of the State of Mississippi, and a false, forged and counterfeit seal, purporting to be the official seal of said Auditor, which said box and its said contents he, the said J. F. Cunningham, did then and there receive and take possession of as aforesaid, towards the commission of said crime, but was then and there intercepted and prevented in the execution of the same; and that the said Cunningham, by receiving and taking possession of said box and its said contents, as aforesaid, feloniously did then and there attempt and endeavor to forge and counterfeit a large number of instruments, pur-

porting to be warrants of said Auditor, with intent to injure and defraud.

To this indictment the defendant interposed a demurrer, which was overruled by the court; and, upon the plea of not guilty, the case was submitted to the jury, who found the defendant guilty as charged, whereupon the court pronounced the judgment from which this writ of error is prosecuted.

Various errors are here assigned in the judgment of the court below, of which we deem it necessary to notice only those which question the validity of the indictment, the propriety of the action of the court in the admission of evidence, and in giving and refusing instructions to the jury.

This is an indictment for an attempt to forge auditor's warrants on the State treasury. This doctrine of attempt to commit a substantive crime is one of the most important, and at the same time most intricate, titles of the criminal law. It is truly remarked by Mr. Bishop, in his valuable work on criminal law, that there is no title, indeed, less understood by the courts, or more obscure in the text books, than that of attempts. There must be an attempt to commit a crime, and an act toward its consummation. So long as an act rests in bare intention, it is not punishable; but, immediately when an act is done, the law judges not only of the act done, but of the intent with which it was done; and if accompanied with an unlawful and malicious intent, though the act itself would otherwise have been innocent, the intent being criminal, the act becomes criminal and punishable. Russell on crimes, edition of 1826, page 46. The word attempt signifies both the act and the intent with which the act is done. The intent gives color to the act, to the extent of making, under the circumstances, an act indictable or not, according as the intent is greater or less in evil. 1 Bishop C. L., § 684. And in considering technical attempts, the jury may take into view the nature of the act as matter of evidence, to determine the particular intent with which it was done. 1 Bishop C. L., § 665.

With reference to the forging an auditor's warrant on the State treasury, section 2594 of the Code of 1871 provides that, if any person shall falsely or fraudulently make, forge or alter any writing, being, or pretending to be, an auditor's warrant on the State treasury, with intent to defraud the State, he shall be deemed guilty of forgery. And section 2887 of the same Code, under which this indictment was framed for an attempt to commit this offense, provides that every person who shall design and endeavor to commit any offense, and shall do any overt act towards the commission of the same, but shall fail therein, or shall be prevented from committing the same, on conviction thereof shall be punished as provided by the statute.

It is insisted by counsel for plaintiff that the receiving and taking possession of the box, as charged in the indictment, is not an overt act towards the forging of the auditor's warrants, within the meaning of the statutes.

An overt act is one which manifests the intention to commit the crime. 2 Bouvier's L. D., 267. The indictment charges that the plaintiff received the box designing to commit the crime of forgery. The word designing, clearly indicates the intention with which the box was received, containing the means well adapted to the consummation of the forgery charged. If the definition of an overt act, as above given, be correct, the reception and possession of the box taken by the plaintiff, containing the means so well adapted to effectuate the purpose charged to have been intended, manifest the intention to commit the crime of forgery, and was an overt act toward the commission of the offense, in the contemplation of the statute. The indictment, however, would have been more perfect, had it charged that the defendant received and took possession of the box with the *knowledge* that it contained a large number of fraudulently printed papers, purporting to be blank warrants of the auditor of public accounts of the State of Mississippi, and also, a forged and counterfeit seal, purporting to be the official seal of said auditor.

The attempt charged in this indictment, can be made only by an actual ineffectual deed, done in pursuance and in furtherance of the design to commit the substantive crime, of such an attempt, it is an essential ingredient that there should be such a beginning, as, if not interrupted, would end in the completion of the act. Wharton's Am. Cr. Law, § 2702. An attempt may be immediate, as an assault for instance; but it very commonly means a remote effort, or indirect measure taken with intent to effect an object. People v. Bush, 4 Hill, 135. The taking the impression of the key of a storehouse, with the intent subsequently to enter, is an attempt to commit larceny, though the act was not consummated. 3 Wharton's C. L., § 2797.

It is contended that the indictment is defective in not stating who was to be defrauded by the forgery. This, it is believed, would have been a fatal defect in an indictment for forgery, and, inasmuch, as this is an indictment for an attempt to commit that offense, in forging auditor's warrants on the State treasury, we think that the indictment should charge that the attempt to forge said warrants was, with the intent to injure and defraud the State.

There may, however, be cases in which an indictment for attempting to commit an offense, where it is not necessary to maintain an exactness as great as that which is essential in an indictment for the offense itself; as in an indictment for an attempt to suborn a witness, it is not necessary to specify the particular perjury which the defendant attempted to suborn the witness to commit. The State v. Holding, 1 McCord, 31, and 1 Bishop's Criminal Procedure, § 554, in note. And also, in an indictment for attempt to steal in a dwelling-house, a specific description of the goods and chattels meant to be stolen, it has been held, it is not indespensible, for the reason that where there is only an attempt, it is not always possible to say what property the would-be thief meant to steal. 1 Bishop's Criminal Procedure, § 565. But where an uncertainty does not necessarily exist, an indictment for an at-

tempt to commit any offense should contain a correct description of the offense.

We are aware that Chitty, in his third volume of Criminal Law, 1036, says, that "it is not necessary, to constitute forgery, that there should be an intent to defraud any particular person, and a general intent to defraud will suffice," and refers to 3 T. R., 176, and 1 Leach., 216, in notes, in support of that view of the law. But we think the more modern and correct doctrine to be, that an indictment for an attempt to commit a substantive crime, with the exceptions arising from necessity, should give a full and correct description of the crime attempted to be committed. Archbold says: "Where the intent mentioned in the statute is to defraud any particular corporation, it must, of course, be so laid in the indictment." And Bishop says: "This is the doctrine of the courts everywhere." 2 Bishop on Criminal Procedure, §§ 374, 375.

Generally, there are two persons who legally may be defrauded; the one whose name is forged, and the one to whom the forged instrument is to be passed. In such case, it is prudent, in the indictment, to charge the offense, in different counts, to have been committed with intent to defraud each of the persons that might have been defrauded by it, if the forgery had succeeded. 2 Bishop on Criminal Procedure, § 374.

If the foregoing view of the law in reference to the form of the indictment, be correct, it follows that the court erred in overruling the defendant's demurrer to the indictment against him.

Although the action of the court below in the admission of testimony, on behalf of the prosecution, on the trial of the cause, is assigned for error, yet it seems not to be insisted on in the argument. We think there is no error in the admission of the testimony on the part of the State. And inasmuch as the instructions were based upon the assumption that the indictment was legally sufficient, in the view taken of the indictment in this case, it becomes un-

necessary to consider the objections to the giving and refusal of instructions to the jury during the progress of the trial.

The judgment must be reversed, the demurrer sustained, and the indictment quashed, and the cause remanded for further action in the court below, and the plaintiff in error detained in custody until discharged by due course of law.