# Commonwealth *v.* Joseph Tadrick, Annie Tadrick, Johanna Tadrick.

*Criminal law—Autrefois acquit, when a good bar.*

The true test to ascertain whether the plea of autrefois acquit be a good bar is whether the evidence necessary to support the second indictment would have been sufficient to secure a legal conviction on the first.

*Criminal law—Larceny—Statutory burglary.*

Larceny and statutory burglary are distinct crimes and an acquittal for larceny is not a bar to an indictment for the latter crime.

*Practice, Q. S.—Plea of autrefois acquit.*

The appellant was acquitted on an indictment for larceny and receiving stolen goods. Subsequently she was convicted under an indictment charg-

ing, first, breaking and entering prosecutor's dwelling house, with intent to steal his goods, etc., and, second, with willfully and maliciously, without breaking, entering said dwelling house, with a like intent. The indictment also contained other counts but the commonwealth sought to convict on the second count only. The evidence relied upon by the commonwealth being such as would have sustained a conviction for attempted larceny in the first case it was error to instruct the jury to find for the commonwealth in an issue based on a plea of autrefois acquit.

*Criminal law—Evidence—Prior acquittal.*

The evidence of former acquittal having been admitted and the jury having been improperly instructed to find for the commonwealth, on the plea of autrefois acquit it was error in the trial of the general issue to refuse the appellant the benefit of such evidence, she having done all that she could to make it effectual in the regular way.

*Practice, Q. S.—Trial—Charge of court.*

Where a charge is open to the objection of being confusing and misleading it becomes erroneous and will form ground for reversal.

Where under an indictment for statutory burglary the charge has a tendency to lead the jury to regard the larceny, of which defendant had been acquitted, as the most essential element of the offense for which she was then being tried, the charge is defective. The jury should have been told in words that could not have been misunderstood that the fact of the larceny bore only on the intent of entering the house.

*Criminal law—Statutory burglary—Evidence of intent.*

Where an entry is neither actually nor constructively against the will of the occupier of the house, but is made on his purely spontaneous invitation, it is suggested as doubtful whether such entry can be deemed " willfully and maliciously " made, within the meaning of a highly penal statute.

SMITH, J., while concurring in the reasons given for reversal, dissents from the view of the other members of the court, implied in the above suggestion.

Argued Feb. 19, 1896. Appeal, No. 6, Feb. T., 1896, by Annie Tadrick, defendant, from judgment of Q. S., Northumberland County, May Session, 1895, No. 7, on verdict and sentence. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Indictment in four counts : 1st count, breaking and entering a dwelling house with intent to commit a felony ; 2d count, entering a dwelling house, without breaking, with an intent to commit a felony; 3d count, conspiracy to break and enter a dwelling house ; 4th count, conspiracy to enter a dwelling house without breaking. Before ARCHBALD, P. J., specially

presiding.  Verdict of guilty as to Annie Tadrick, acquittal as to Joseph Tadrick, nol pros. as to Johanna Tadrick.

The facts sufficiently appear from the opinion of the Superior Court.

· *Errors assigned* were :

(1) In charging the jury that they must find for the commonwealth, which charge is as follows :

"I do not know how you can do anything except render a verdict in favor of the commonwealth.   The defendants put in a plea that they were tried on this same case in February, 1894, and acquitted.   If that be so, of course they could not be tried again, because a man cannot be tried twice for the same offense, but the evidence which is offered is of a different character of crime; the indictment in that case was for larceny and receiving against Johanna Tadrick and Annie Tadrick and receiving stolen goods against Joseph Tadrick ; the case we are here trying is quite a different one.   While there are four counts in the indictment the substantial charge is statutory burglary, and that is quite a different offense from actual stealing ; and as the evidence which has been introduced on behalf of the defendant does not sustain the plea I do not see how you can do anything else than render a verdict in favor of the commonwealth ; and I think you can put your heads together in the box and agree upon a verdict.   Will one of you pass along and see whether you can agree upon that verdict."

(2) In permitting the following questions to be asked in the examination of Peter Werner, and in not sustaining the objections as made by the defendant below :

Q. When you came back how soon afterwards did you miss your money ?

Mr. Dewart: We object to that.   There is no overt act alleged in this indictment at all, and we take the position that the commonwealth must hold themselves down to the conspiracy itself.   Had they alleged an overt act your honor would not be hearing this case.   We take the position that not having alleged an overt act in the indictment they must confine themselves purely and simply to the conspiracy as set forth ; the probata and allegata must agree.

The Court: There are four counts in this indictment; the

first charging a statutory burglary with breaking and entering; the second an entry without breaking and then two counts of conspiracy, the last one charging an overt act of entry. This is directed now to the main count in the indictment, which is statutory burglary, and not to the conspiracy. I will allow them to ask that question whether he missed the money or not, for the purpose of enabling them to prove a larceny; it is a circumstance in the case. They must do something more than prove a larceny. If we get evidence of larceny it would not prevent us from taking that and going on to make up a charge of burglary. I think the evidence is part of the evidence going to make up the charge laid in this indictment. The mere fact that they may traverse the same evidence will not exclude it. I will receive the evidence. The question was whether he missed this money after that.

A. That evening.

(3) In permitting the following question to be asked of Peter Werner, and in not sustaining the objection as made by the defendant below:

Q. How much money was gone? A. Five hundred and sixty dollars.

(4) In permitting the following questions to be asked in the examination of Johanna Tadrick and in not sustaining the objection as made by the defendant below:

Q. Well, after you got there what became of Peter Werner and his wife? A. They went out in the yard to milk the cow. Q. What did you do when they were down in the yard milking the cow? A. I stick my hands under the tick and took the money and put it in my dress.

(5) In permitting the following questions to be asked in the examination of Walter Daubert, and in not sustaining the objection as made by the defendant below:

Q. You were present at the 'squire's office. A. I was. Q. And you heard Johanna Tadrick sworn there? A. I did. Q. Was her mother and father, that is Joseph Tadrick and Annie Tadrick, there? A. They were. Q. Do you recollect of hearing Johanna Tadrick swearing as to the kind of money that was in the pocketbook? A. I did.

Mr. Ryon objected as anything she would say would not bind these defendants.

The Court: You may answer that question. Defendant excepts and bill sealed.

A. I do.

6. In permitting the following questions to be asked in the examination of Paul Fendrick, and in not sustaining the objection as made by the defendant below:

Q. Did you ever live at Hickory Ridge in Coal township? A. Oh, yes! yes, sir. Q. Tadrick live there? Yes, sir. Q. Did he live there last January and February? A. Yes, sir. Q. A year ago? A. Yes, sir. Q. How far is that from the borough of Shamokin? A. About four miles. Q. Prior to January and February, 1894, what was his condition physically, able to labor and work? A. Well, he could not work for at least seven or eight months or so.

7. In rejecting the defendant's offer of the records of the trial and acquittal of the defendant in the former case for larceny, to be followed by proof of the identity of the party and the crime.

Mr. Dewart: We offer in evidence indictment No. 31, February Sessions, 1894, Commonwealth of Pennsylvania v. Johanna Tadrick and Annie Tadrick, for larceny and receiving.

8. In charging the jury as follows:

When you were sworn it was to try three defendants, Joseph Tadrick, Annie Tadrick and Johanna Tadrick; that is the father, the wife and the child. But, as you have seen during the course of the trial, the district attorney has entered a nolle prosequi, as we call it, in favor of the little child; so that you are relieved from rendering any verdict in regard to her.

9. In charging the jury as follows, to wit:

And I will relieve you also with regard to the father, Joseph Tadrick, because the evidence, however it may convince you with regard to Annie Tadrick, is not sufficient to justify a verdict against Joseph Tadrick, the husband and father. It does not show, so far as we have any evidence, that he had anything to do whatever with the taking of this money, whether Annie Tadrick or the daughter had or not.

The contention here is that this little child at the instance and instigation of her mother went to the house of Peter Wener and entered it with the intention of stealing his money, and that she carried out that purpose and intent, and did take the money of Peter Wener. That is, in substance, the charge that

is made and which the commonwealth has produced evidence
to sustain.

The testimony of Mr. Wener is that the mother knew—be-
cause they were neighbors there, I believe, if not living in the
same house yet living next door—that the mother knew where
this money was kept, in his bed tick near the head of his bed ;.
and while this child had been there once or twice before, accord-
ing to her statement, and did not have the courage to go on
with the act, yet upon this Sunday night she did go there and
while she was put in charge of a little child and Mr. and Mrs.
Wener went out to take care of the cow she was left alone, and
then having that opportunity she took the money and took it
and gave it to her mother.   The child says that her mother
told her where the money was and she found it where she had
been told.   When she came back she gave the money to her
mother in the pocketbook, she says it was rolled up, and you
remember that Mr. Wener also testified how it was rolled up.
Her description corresponds quite a little with the description
given by Mr. Wener.   Then this child says that her mother
gave her a $20.00 bill, and after wetting it told her to take it to
her father and say that she had found it by the pump ; and she
says her mother also told her that she had thrown a part of the
money over Mr. Wener's fence.

Now we naturally question whether this child received any
corroboration from the testimony of others.   It is claimed on
the part of the commonwealth that she does.   I did call your
attention to one point of possible corroboration, and that is the
description given by Mr. Wener of how he rolled up the money,
and the statement by the child as to how she found it, and the
description that she gives.   Her testimony in that respect as
to how the money was wrapped up corresponds with what Mr.
Wener says ; this is one small point of corroboration.   It is
claimed, however, that there is other and more important than
that ; for instance Daubert, the constable, says he was present
at 'Squire Carney's when testimony was being given, and he
heard this little girl sworn ; and at that time she told about the
money that was taken and said there were four $20.00 gold
pieces, and when she mentioned that the mother, who was then
present, threw up her hands and made some exclamation, say-
ing it was all paper money.   Also Anna Jopena testified that

she was working at Mr. Mahon's, where this child subsequently worked as a nurse girl, I believe, and that she saw the mother and John Custa come there and talk with this little child; and that while they were there talking that the child spoke of having taken this money out of the bed; and that there was some talk more or less with the child, and finally that the mother said to come away, that they would not talk any more with her, and that they left.

10. The learned court below erred in charging the jury as follows, to wit:

I would like to add one other matter, and that is with regard to what has been said before you in regard to the defendant, Mrs. Tadrick, being tried before upon this charge. There is no evidence to show that they have ever been tried and acquitted upon this charge before. If there was evidence of that character certainly I would not allow a conviction in this case or allow the matter to be submitted to you. But we have no such evidence before us. We have evidence, it is true, that they were indicted for larceny, but that that was this case we have no evidence to show. There is a gap there and, therefore, as there is no evidence there is no need of your considering that question. You are simply to pass upon the evidence which you have before you and to which I have, in substance, endeavored to call your attention in this charge.

*William W. Ryon* and *Lewis Dewart*, for appellant.—Whenever the offenses charged in the two indictments are capable of being legally identified as the same offense by averments, it is a question of fact for the jury to determine whether the averments be supported and the offenses be the same: Whart. Cr. Pl. & Pr., 8th ed. sec. 484; Commonwealth v. Conner, 9 Phila. 591.

And no person so tried as herein lastly mentioned shall be liable to be afterwards prosecuted for an attempt to commit the felony or misdemeanor for which he was so tried: Act of March 31, 1860, sec. 50, P. L. 442.

It is very evident that the plaintiff can never be tried again upon any charge of which he might have been convicted upon the first indictment: Hilands v. Com., 114 Pa. 380.

The true test to ascertain whether a plea of autrefois acquit

be a good bar is whether the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first : Heikes v. The Commonwealth, 26 Pa. 513 ; Com. v. Trimmer, 84 Pa. 69.

On the 7th and 10 assignments of error counsel relied on Altenburg v. Com., 126 Pa. 602.

*Voris Outen,* district attorney, *P. A. Mahon* and *John W. Gillespie,* for commonwealth.—Intent in burglary, as in other criminal offenses, is to be inferred from facts : 1 Whart. Am. Cr. L. 681.

Evidence that a felony was actually committed is evidence that the house was broken and entered with intent to commit that offense : 1 Roscoe's Cr. Ev. p. 517, sec. 282.

It is not necessary, in order to put proof of goods stolen in evidence, that they should be specified in the indictment : 1 Whart. Cr. L. p. 682, sec. 813 ; also p. 687, sec. 820.

The felonious intent, charged in the indictment, is sufficiently proved by evidence of a felony actually committed in the house ; it being presumed that the act was done pursuant to a previous intention : 3 Greenleaf Cr. Ev. sec. 82.

These, and kindred authorities we think dispose not only of the 2d, 3d and 4th but also of the 5th and 6th assignments of error, which naturally fall under the same head. The offer embraced in the 7th assignment of error was properly rejected, because it would not, even if true, be a bar to indictment in this case ; at most it would show a larceny and receiving, which is no answer to the crime of statutory burglary which is here charged: Com. v. Birdsall, 69 Pa. 482; Com. v. Peiffer, 9 Phila. 593.

OPINION BY WICKHAM, J., May 11, 1896:

On December 31, 1893, one Peter Werner missed a sum of money, which he had concealed in a bed tick in his dwelling house. Suspecting that his neighbors, Joseph Tadrick and Annie, his wife, and Johanna, their daughter (the latter being then between eleven and twelve years old) had something to do with its disappearance, he caused their arrest a few days later. Indictments were found against the mother and daughter for larceny and receiving stolen goods, and against Joseph Tadrick for receiving only.

On February 6, 1894, the three defendants were acquitted of all the charges contained in the indictments and nothing more was done until March, 1895, when Werner again had them arrested, and later secured an indictment against them in which they were jointly charged, first, with breaking and entering the prosecutor's dwelling house, with intent to steal his goods, chattels, moneys, etc., contrary to section 2 of the act of April 22, 1863, P. L. 531; and second, with willfully and maliciously, without breaking, entering the said dwelling house, with a like intent. The indictment also contains three other counts charging conspiracy.

Early in the trial, the court below, on motion of the district attorney, directed a nolle prosequi to be entered as to Johanna Tadrick, who was used by the commonwealth as a witness. In charging the jury the court instructed them to acquit Joseph Tadrick, against whom there was no evidence, and, so far as the appellant, Annie Tadrick, was concerned, limited their attention to the second count of the indictment under which she was convicted and sentenced. The section of the act of 1863, under which this count was framed, created the offense sometimes called statutory burglary, and provides as follows: " If any person shall in the day-time, break and enter any dwelling house, shop, warehouse, store, mill, barn, stable, out house or other building, or, willfully and maliciously, either by day or night, with or without breaking, enter the same with intent to commit any felony whatever therein, the person so offending shall be guilty of felony," etc.

The defendants, at the trial, entered the plea of autrefois acquit, and introduced sufficient evidence to show that the larceny whereof Johanna Tadrick had been acquitted was the same felony which the last indictment charged her with intending to commit. The court below, acting on the view that the offences of larceny and statutory burglary are so dissimilar that a conviction or acquittal of the former would not bar a prosecution for the latter, directed the jury to find for the commonwealth.

This is apparent, not alone from the charge, but more fully by the following record entry as to the jury's action, viz: " after hearing, by direction of the court, they find in favor of the commonwealth."

The appellant was convicted on the testimony of her daughter Johanna, aided by a few circumstances of corroboration. In substance, the evidence for the commonwealth was that the appellant had sent the daughter to the house of the prosecutor to steal the money; that the daughter went unwillingly; that when she reached the door and, so far as we can see, before she had knocked or indicated a desire to enter, she was invited by the prosecutor and his wife to go in, which invitation she accepted; that she took her seat on the bed where she knew the money was concealed; that, at the request of the prosecutor and his wife, she cared for their baby while they went to the stable to milk a cow; that, during their absence, she reached into the bed tick, abstracted the money and hid it in her dress, and on returning to her home gave the money to her mother. This evidence, if believed, made the mother an accessory before the fact to the larceny, and under section 44 of the act of March 31, 1860, P. L. 439, gave the commonwealth the right to indict and try her as a principal felon.

It may be added here, that while there was evidence that the girl went to the prosecutor's house at least once before, for the purpose of stealing his money, yet it is evident from the record that the commonwealth elected to rely on the entry made December 31, 1894, and that was the only entry which the court in its charge directed the jury to consider. That election is binding, not only here, but as well in any future trial of the case.

Returning to the plea of autrefois acquit, it was held in Heikes v. Commonwealth, 26 Pa. 513 (citing People v. Bauste, 1 John. 66), that, "the true test to ascertain whether the plea of autrefois acquit be a good bar is, whether the evidence necessary to support the second indictment would have been sufficient to secure a legal conviction on the first." The rule is repeated in Commonwealth v. Trimmer et. al., 84 Pa. 69, and Hilands v. Commonwealth, 114 Pa. 380.

Applying this test to the present case, the court below was clearly right in its instructions to the jury, unless the appellant could have been convicted under the first indictment of an attempt to commit larceny. Where the facts are not disputed, the court may direct a verdict for or against the commonwealth, as the case may require: Whart. Crim. Plead. & Prac. sec. 812.

. "It is the duty of the court to declare the legal effect of a record which is offered to sustain the plea of autrefois acquit:" Commonwealth v. Trimmer et. al., supra.

Larceny is an offense against personal property. The crime whereof the appellant has been convicted is one against realty and the security of its occupant, "partaking of the nature of burglary:" Rolland v. Commonwealth, 82 Pa. 306. It is complete the moment one willfully and maliciously crosses the threshold with intent to steal and before any further attempt has been made to commit the larceny. The actual commission of the latter offense may be prevented by lack of safe opportunity, the vigilance of the inmates of the house, the removal of the article intended to be stolen, or by a change in the offender's purpose. "An acquittal of burglary with intent to commit a larceny is no bar to a subsequent prosecution for the larceny charged to have been actually committed, and a conviction for the larceny is not a bar to a subsequent indictment for breaking and entering with the intent to commit the larceny :" 1 Bish. Crim. Law, sec. 1062; Whart. Crim. Evi. sec. 580. In Wilson v. The State, 24 Conn. 57, it was held that indictments for statutory breaking and entering, with intent to steal, and for larceny, could legally stand on the same transaction, there being a difference between the nature and essence of the offenses.

But where, as in Pennsylvania (see sec. 50, act. March 31, 1860, P. L. 442) the jury, on acquitting the defendant of the offense, specifically charged in the indictment, may convict him of an attempt to commit the same, there can be no subsequent conviction of any crime, whatever may be its name or aspect, the evidence necessary to make out which would have sustained a conviction for an attempt under the former indictment. "Where one act has two or more aspects, if the defendant could have been convicted of either under the first indictment, he cannot be convicted of the two on the two indictments, tried successively. In other words, where the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction on the first, the second is barred by a conviction or acquittal on the first." Whart. Crim. Plead. & Prac. 471.

It remains to be seen whether the appellant could have been

properly convicted of an attempt to commit the larceny charged against her in the first indictment. To constitute an attempt there, must be an intent to do a thing, combined with an overt act which falls short of the thing intended. It is sometimes very difficult to determine the line between mere intent and attempt. In the case under consideration, Johanna Tadrick left her mother's house, intending to steal the prosecutor's money, entered the house of the prosecutor and seated herself on the bed where she knew the money was concealed. Nothing remained to be done save to insert her hand and secure the money. Each of the three acts mentioned was intended to be, and actually was, a step towards the consummation of her felonious purpose. Taken together and in connection with the uninterrupted intent existing in her mind, we are compelled to hold that they constituted an attempt at larceny which would have been punishable had she gone no further. If the offense of larceny were not completed, we must assume, from the evidence, that the failure was not owing to a change of purpose, which of course would leave her guiltless, but to extraneous circumstances, over which she had no control. An overt act is one which manifests an intention to commit the crime: Bouvier's L. D. 267. It need not be the last proximate act prior to the consummation of the attempted crime, if the latter be a felony: Uhl v. Commonwealth, 6 Grattan, 706; 1 Bish. Crim. Law, sec. 764.

In People v. Lawton, 56 Barb. 126, it appeared that the defendant, intending to break and enter a certain storeroom, took with him tools for the purpose and, with a companion, reconnoitered the premises. Concluding that they needed another implement with which to effect an entrance, they deposited their tools in an adjoining alley and tried to break into a blacksmith shop near by to secure the additional implement. While so engaged, they were surprised and the defendant was arrested. It was urged that no offense had been committed against the storeroom, as no physical violence appeared to have been employed, nor an actual attempt to enter shown, but the appellate court, in a well reasoned opinion, held that the defendant had been rightly convicted of an attempted breaking and entering, the court saying, "An attempt may be immediate, an assault for instance, but it very commonly means a

remote effort or indirect measure, taken with intent to effect an object." See also 1 Bish. Crim. Law, 760; Cunningham v. State, 49 Miss. 685.

We are satisfied that the evidence relied on by the commonwealth to convict, in the present case, would have sustained a conviction for attempted larceny under the first indictment, and that therefore the first assignment of error, which complains of the direction of the court below to the jury to find for the commonwealth, in the issue based on the plea of autrefois acquit, must be sustained.

The sixth assignment of error rests on the admission of testimony against the appellant's objection, showing that Joseph Tadrick was physically unable to perform manual labor for a period of seven or eight months next preceding the commission of the alleged crime. Whether admissible or not, the testimony, we are satisfied, was harmless, and therefore this assignment of error is not sustained.

The allowing proof of the larceny complained of in the second, third and fourth assignments was not error. This was permitted, not to establish a substantive offense, whereof the appellant could have been convicted at the trial, but merely to show the purpose of the entry. These assignments of error are therefore overruled.

The answer of the witness mentioned in the fifth assignment contained nothing helpful or hurtful to either side, and hence constitutes no ground of objection here.

The evidence, the rejection of which is complained of in the seventh assignment, was a repetition of that offered and admitted in support of the plea of autrefois acquit. The court refused to admit it again under the general issue. As this evidence was rendered entirely nugatory by the binding instruction to find for the commonwealth in the issue raised by the former plea, the appellant, under the ruling in Altenburg v. Commonwealth, 126 Pa. 602, was in some way entitled to its benefit later in the trial. The seventh assignment of error is sustained.

The eighth assignment is overruled. Johanna Tadrick was a competent witness, whether or not a nolle prosequi was entered as to her.

The second paragraph of the ninth assignment of error con-

tains the following, inter alia, from the charge of the learned judge of the court below, viz: " The contention here is that this little child, at the instigation of her mother, went to the house of Peter Werner and entered it with the intention of stealing his money, and that she carried out that purpose and intent, and did take the money of Peter Werner. That is in substance the charge that is made and which the commonwealth has produced evidence to sustain."

It is hardly necessary to say that the language just quoted was calculated to give the jury an entirely wrong idea of the offense, for which the appellant was being tried, and to lead them to regard as its most essential element, the larceny of which she had previously been acquitted. That the presentation of the case in this way was the result of inadvertence is evident from the fact, that elsewhere in the charge the crime to be considered by the jury is correctly, although very briefly and generally, defined.

We cannot say which utterance of the court controlled the jury. The charge is open to the objection of being confusing and misleading, and is therefore erroneous. The jury should have been told in words that could not be misunderstood, that the fact of the larceny bore only on the question of intent in entering the house. The ninth assignment of error is sustained.

The language from the charge assigned for error in the tenth and last assignment is also, when we look at the general tenor of the whole charge, calculated to mislead. The court says, " We have evidence, it is true, that they were indicted for larceny, but that that was this case we have no evidence to show. There is a gap there, and therefore, as there is no evidence, there is no need of your considering that question."

A lawyer, familiar with the facts of the case, might infer the court's meaning, after studying the other instructions, but the average juror would be apt to think that the charge was substantially larceny, which the defendants were trying to avoid by showing that they had been once tried for the same offense. The tenth assignment of error is sustained.

As this case goes back for a new trial, we deem it proper to call attention to an important question, as to the construction of the act of 1863, not fully raised in the court below, nor presented by the record here, but suggested by the evidence and

referred to in the argument of the appellant's counsel. So far as the evidence shows, the appellant's daughter, when she reached the door of the prosecutor's house, and before she had, by knocking, or otherwise, indicated a' desire to enter, was invited to come inside by the prosecutor and his wife. No act, request, fraud, trick or artifice appears to have been used to obtain admission. The invitation may be said to have resulted from the spontaneous will of the lawful occupiers of the house, uninfluenced by the appellant or her daughter, unless the latter's physical presence is to be regarded as an influence worthy to be considered. If the evidence on this point, produced at the next trial, is similar to that offered at the first, it will be a matter well worthy of consideration whether an entry, neither actually nor constructively against the will of the occupier of the house, can be deemed " willfully and maliciously " made, within the meaning of these words when employed in a highly penal statute.

The judgment is reversed and a venire facias de novo awarded.

CONCURRING OPINION BY SMITH, J., May 11, 1896 :

While agreeing that errors were committed on the trial of this case, making a reversal of the judgment necessary, I cannot concur in the view suggested in the concluding paragraph of the opinion of the majority of the court, as to the legal effect of the invitation given to Johanna Tadrick to enter the prosecutor's house, as she approached the door, apparently with the intention of entering.

The count of the indictment on which the prisoner was convicted is framed under sec. 2 of the act of April 22, 1863, making it a felony to " willfully and maliciously, either by day or by night, with or without breaking, enter (inter alios) a dwelling house, with intent to commit any felony whatever therein ; " and it charges an entry into a dwelling house " without breaking the same " with intent to commit a felony therein.

This section, so far as it has received judicial construction, has been regarded as aiming at the intent rather than the manner of the entry. In Hollister v. Commonwealth, 60 Pa. 103, it was said by Chief Justice THOMPSON: " This section seems to have been designed to punish the felonious intent with

which an entry is made, even if no felony be actually committed;" and in Com. v. Carson, 166 Pa. 183, Mr. Justice McCollum says: "It is the intent with which the entry is made, and not the manner or hour of making it, that is essential and controlling."

It appears from the evidence that the prisoner and her daughter, Johanna Tadrick, frequently visited the prosecutor, and that the prisoner was not only familiar with the interior of his house, but had learned that he kept some money concealed in a bed. The daughter testified that her mother told her where this money was hidden, and directed her to go to the prosecutor's house and take it; that she accordingly went for the purpose of taking the money there, and on reaching the door was invited to enter and be seated, which she did; and that, while the prosecutor and his wife were in the yard, milking a cow, she went to the place where the money was secreted, took it, and carried it home to her mother.

At whose invitation she entered the house does not definitely appear; but it may be taken for granted, under all the circumstances, that her entry was with the assent of the prosecutor. A fortiori, it may also be taken for granted that her felonious intent was unknown to the prosecutor when she was invited to enter. That this invitation, given in ignorance of her purpose, deprived her entry of the felonious character which the statute gives it by reason of her felonious intent, is a view in which I find it impossible to concur.

At common law, an entry into a dwelling house was felonious only when the elements of burglary were present—when it was effected in the night, by breaking, with intent to commit a felony therein. The breaking might be actual, as forcing open a door, or a window, or it might be constructive, as when the entry was obtained by fraud, trick, artifice, request or deception: Johnston v. Com., 85 Pa. 54, and authorities there cited. But here the statute dispenses with the breaking, and also with the requirement that the entry should be in the night. The only requisite which it preserves is the felonious intent. This being present, the entry, with or without breaking, in the day or night, is a felony. It may be conceded that where the entry is not a trespass it cannot be a burglary. We are not, however, dealing with the common law burglary, in

which the breaking is of itself a trespass, but with the statutory felony of entering without breaking. In my view, the statute does not require even the technical breaking of the close that constitutes a trespass. No " request, fraud, trick or artifice " need be used to complete the offense, because these, in law, constitute a breaking, and that is expressly dispensed with by the statute. It is the evil purpose—the felonious intent—with which the entry is made that brands it as criminal. The gravamen of the offense is the entry with this intent, and whether such an entry be made upon the customary invitation to visitors with presumably innocent purpose, or without this formality, is wholly immaterial, as, under the statute, a felonious intent stamps the entry as felonious.

If, indeed, the occupant of the house, knowing the criminal intent of his visitor, invites him in, a totally different question is presented. But we may take it for granted that, with such knowledge, there would be no such invitation. In the present case there is no logical warrant for the proposition that the will of the occupant and that of the accused coöperated; however they may have concurred in the physical act of entry, they never met with a common purpose, or united in the intent with which the entry was made, and it is therefore incorrect to say that, in a legal sense, the entry was "neither actually nor constructively against the will of the occupant of the house." To hold that an act of the occupant which, under the prevailing social usage, has become a matter of course, will take an entry with felonious intent out of the statute, would largely defeat its purpose, and make a customary act of politeness serve as a shield for criminals. If this be its true construction, then he who intends to commit a felony in a house has only to present himself at the door, with his purpose concealed, to make his entry lawful. There is nothing to warrant such a construction. By the terms of the statute, the criminal character of the entry is fixed by the intent with which it is made, irrespective of any act by an occupant, ignorant of that intent. It is clear from the evidence in this case, that the invitation to enter was extended because of the social relations of the parties, and, as was said in Johnston v. Com., supra, a felonious entry effected under these circumstances but makes the fraud the greater.

The question of intent, when material, is one of fact to be determined by the jury. In the present case it is, in my opinion, for the jury to say whether, under all the circumstances, including the invitation to enter, Johanna Tadrick, by the prisoner's direction, or at her request, entered the prosecutor's house with intent to commit a felony therein. Whether the act creating the offense is a "highly penal statute" or not, is wholly immaterial and irrelevant to the decision of that question : Com. v. Switzer, 134 Pa. 383. The offense is fully defined in the act, entirely independent of the punishment prescribed for its commission.