Miller et ux., Appellants, *v.* Wayne Title & Trust Company.

Argued December 9, 1943. Before Keller, P. J., Baldrige, Stadtfeld, Rhodes, Hirt, Kenworthey and Reno, JJ.

*Thomas A. Riley,* for appellants.

*Samuel A. Montgomery,* with him *Harold D. Greenwell,* for appellee.

Opinion by Keller, P. J., January 27, 1944:

Plaintiffs, Dr. and Mrs. Miller, brought this action of assumpsit against Wayne Title and Trust Company (hereinafter called Wayne) to recover $1,027.82, the remainder of a deposit made by them with the defendant, which, they alleged, it unjustly refused to pay over to them.

The trial judge directed a verdict in favor of the plaintiffs for the amount claimed, with interest, but

subsequently entered judgment for the defendant non obstante veredicto. Plaintiffs appealed.

At the outset it must be emphasized that the *deposit* was not a banking account, subject to check or bearing interest. It was a deposit made by the Millers with Wayne, as their agent and attorney in fact, to secure it against loss resulting from "certain insurances" made by it at their request, in connection with a contract for the construction of a house for them, and to be distributed by it pursuant to the several contracts and obligations involved.

The Millers owned a lot in Tredyffrin Township, Chester County, on which they wanted to build a house. They negotiated with a Philadelphia contractor named Lewis B. Roberts, trading as Roberts Construction Company, (hereinafter called Roberts), for the construction of the house and he agreed to build it according to plans and specifications prepared by an architect for $16,025. They had $5,025 to apply on this amount, and arranged to borrow the balance, $11,000, from the Penn Mutual Life Insurance Company on first mortgage, the lender stipulating that it be furnished with a bond or insurance contract insuring the mortgage to be placed on the property as a first lien free of mechanics' liens and from all claims or loss by reason of non-completion of the building. The plaintiffs arranged with Wayne—chartered as a title insurance company (Act of May 9, 1889, P. L. 159) having its principal place of business in Wayne, Delaware County—to furnish this insurance to the mortgagee, and deposited with Wayne as their agent and attorney, $5,025 of their own money as well as the $11,000 to be advanced by the mortgagee from time to time, to be paid out by defendant in accordance with the terms of a certain contract, dated October 13, 1936, entered into between plaintiffs as owners, and Roberts, as contractor, which provided, inter alia, that the contractor should furnish a bond

satisfactory to Wayne in the sum of $16,025, conditioned for the compliance by the contractor with all the terms and conditions of the building agreement, and that no mechanics' liens or other lien whatsoever should be filed against said building and the curtilage appurtenant by the contractor or any subconstractors, material men or laborers.

The contract further recited that plaintiffs had requested Wayne to make certain insurances of completion and against liens and that it had consented to make the same provided the parties entered into said contract. The contract further provided that the owners, these plaintiffs, constituted Wayne their agent and attorney in fact with authority to declare the contractor in default and to terminate the contract and procure others and charge the cost and expense against the contractor and against any balance in its hands due or thereafter to become due to the contractor. It is unnecessary to recite all the details of this contract and of the powers and authority granted Wayne therein in consequence of its assumption of the contracts of insurance aforesaid requested by these plaintiffs, the owners. It is very broad in its grant of authority as such agent and attorney for the owners, these plaintiffs. In addition the plaintiffs entered into a bond or obligation to Wayne in the penal sum of $32,050, likewise dated October 13, 1936, reciting that Wayne had agreed to insure the mortgage of $11,000 of the **Penn Mutual Life Insurance Company** as a first lien on said premises free of mechanics' liens and from all claims by reason of non-completion of the contract within the price specified and that the obligors, the Millers, had agreed to indemnify the obligee, Wayne, by reason of such insurance; said bond being conditioned, "That if the above bounden obligors ...... shall and do well and sufficiently indemnify and save harmless the said obligee ...... of and from all suits, loss, **damages,**

whatsoever, which the said obligee ...... shall be put to or sustain for or by reason of the failure of the said Lewis B. Roberts ...... to carry out the provisions of said contract and to complete the said construction and keep the said premises free from mechanics liens or claims by reason of non-completion of the contract within the contract price, then the above obligation to be void or else to be and remain in full force and virtue."

The various papers, contracts and obligations show a delegation of broad power and authority by the Millers to Wayne as their agent and attorney in fact looking to the disbursement of the $16,025 to be deposited with it for the construction of the building and the insurance of a first lien mortgage to the Penn Mutual Life Insurance Company.

The contractor duly covenanted and agreed that no mechanics' liens should be filed against the building and curtilage appurtenant by himself or any subcontractors, material men or laborers and also furnished a bond to the Millers, dated October 19, 1936, in the sum of $16,025, signed by him as principal, with Inland Bonding Company, as surety, satisfactory to Wayne, conditioned for the full and faithful performance by Roberts of the contract for the construction of the building in accordance with its terms and conditions, and the payment and reimbursement of all loss and damage sustained by them by reason of failure or default on the part of said principal.

The waiver of the right to file liens against the building, included in the contract, left to subcontractors no security on their contracts except the personal responsibility of the contractor, and three of the bidding subcontractors were not willing to enter into subcontracts with him on that basis alone. These were Frank L. Snedaker & Co., whose contract for lumber and mill-work amounted to $1,684, J. Levitt whose contract for

plumbing and heating amounted to $1,355.95, and The Lumber & Millwork Company whose contract for lumber amounted to $900.

For Wayne to have refused to do anything to surmount this initial obstacle would probably have resulted in the breakdown of the whole affair and an immediate breach of its insurance with Penn Mutual. It had ample funds in hand to provide for the payment of these subcontractors, if they conformed to specifications, and the broad powers given it as agent and attorney in fact for the Millers in the contract and bond above referred to, in our opinion, warranted it in taking the action which it did, viz., it issued, on October 23, 1936, separate guarantees to Snedaker, Levitt and Lumber & Millwork Co., for the payment of their respective subcontracts, "payments to be made upon vouchers approved by the Architect and Owners". The contractor, Roberts, had previously, (on October 21, 1936), in writing, duly authorized Wayne to disburse to the respective subcontractors the amounts of their several subcontracts. The premiums paid Wayne by each subcontractor for this guarantee—one per centum of the subcontract—totalling $39.54 for all three, was nothing more than compensation for the time and trouble involved in the securing and issuance of the guarantees. It is inconceivable that for this nominal sum Wayne would personally guarantee the payment of $3,954, unless assured by the deposit with it of the contract price of $16,025, and its broad authority as agent and attorney for the owners, and the security of their bond, that it had control of the payments to be made under the contract.

The contract provided that the sum to be paid by the owners to the contractor for the work and materials in constructing said house should be $16,025, to be paid as follows:

"Eighty per cent as work progresses, upon written approval of architect and owner.

"Balance to be paid at the expiration of thirty days after completion of work." [1]

Under the eighty per cent clause, as above, the following amounts were paid by Wayne to said subcontractors, by authority of the contractor, on written approval of the architect and owner, to wit,

Frank L. Snedaker & Co. .. $1,070.00
J. Levitt ................. 1,000.00
The Lumber & Millwok Company ................... 855.43   $2,925.43

leaving unpaid on their respective completed contracts:
Frank L. Snedaker & Co. .. $614.00
J. Levitt ................. 369.65
The Lumber & Millwork Co. 44.47   $1,028.12 [2]

On or about April 21, 1937, after the said three subcontractors had completed their contracts, Roberts, the contractor, defaulted in his contract and failed to complete the construction of said house or pay the balances due the said subcontractors as above. There had been paid to him, on vouchers approved by the architect and owners, including the $2,925.43 paid said subcontractors, $11,090.83 out of the deposit of $16,025. The Millers employed Hart & Parlaman to complete the work yet remaining to be done on said contract at a cost of $5,983.75, of which $3,906.35 was paid by Wayne out of the funds in its custody, on vouchers approved by the architect and owner, leaving the sum of $1,027.82 remaining in its hands out of said deposits of $16,025.

---

[1] It will be noted that the final payment of 20% to the contractor did not require, as a prerequisite, the written approval of architect and owner.

[2] By some slight error, the amount actually retained by Wayne on these contracts was $1,027.82.

The Millers notified Wayne that the contracts of said subcontractors had not been satisfactorily performed and were not in accordance with the respective contracts and specifications under which they were furnished, and that Wayne should not pay them the amounts remaining unpaid by the contractor; and they demanded of Wayne the payment to them of said $1,027.82 yet in its hands. The lumber and millwork and plumbing and heating remained in the house just as furnished by the subcontractors.

Wayne, pursuant to said notices, refused to pay said subcontractors the respective amounts claimed by them to be due, and separate actions were brought in Delaware County by Levitt and Snedaker respectively against Wayne on its respective guarantees to them for the amounts yet due them and unpaid on their subcontracts. They had no claim against the deposit in Wayne's hands and made none against it.

It will serve no useful purpose to recite in detail the course of these actions. Instead of notifying the Millers of the actions and calling upon them to defend them and support their notices to Wayne to withhold payment, by virtue of their ownership of the house and of the deposit for its construction, and their ultimate liability to Wayne under their bond, Wayne sought to make the respective plaintiffs and the Millers interplead, and orders requiring them to interplead were entered by the Court of Common Pleas of Delaware County. Snedaker & Co. appealed from the order in its action; Levitt did not, and, in the interpleader issue following, judgment was entered in favor of Levitt and against the Millers for the amount of his claim and interest. While the order for interpleader should not have been made, in the absence of an appeal the parties are concluded by the result. Snedaker's appeal was sustained by this court and the order directing an interpleader was reversed. See *Frank C. Snedaker & Co. v.*

*Wayne Title & Trust Co.*, 139 Pa. Superior Ct. 381, 11 A. 2d 776. Wayne then attempted to bring in the Millers, who lived in Chester County, as additional defendants in said action, by a service of the writ of scire facias on their *attorney*, who had appeared in the action solely to contest the rule to interplead. On appeal from an order adding them as defendants, we reversed. See *Snedaker & Co. v. Wayne Title & Trust Co.*, 145 Pa. Superior Ct. 65, 20 A. 2d 819. We may say, however, that these various proceedings, though ineffectual as brought, were sufficient to put the Millers on notice that these subcontractors whose unpaid claims they had notified Wayne not to pay, on the ground that their contracts had not been performed in accordance with the specifications, had brought actions against Wayne to enforce their payment and that the duty rested on them, that is, the Millers, to support their notice to Wayne and defend against said actions. We said in the last mentioned case, pp. 66-67: "The action was a simple one in assumpsit ...... on a written contract, in the nature of an insurance contract, under which the defendant became surety to the plaintiff, a sub-contractor, for the payment of the agreed contract price by the general contractor, who was building a house for one Stanley J. Miller and his wife. The plaintiff had executed a release of mechanics' liens to the owners, the Millers, and had no possible claim whatever against them; but the latter are alleged to have deposited a fund with the defendant to indemnify it against loss on said insurance or surety contract. There was no reason why the case should not have been promptly tried; and if the plaintiff was successful the defendant could then have reimbursed itself for any moneys paid by reason of its contract of insurance or surety out of the fund left in its hands for that purpose."

The trial of that action resulted in a verdict for the

plaintiff, Snedaker & Co., for the full amount of its claim and interest.

In the meantime, the Millers had brought an action in Chester County against the contractor Roberts and the surety on his bond, Inland Bonding Company, for the damages sustained by them because of the contractor's default in his construction contract.

Among the items or claims of damage included in the plaintiffs' statement in that case, appeared the following: "15. That by reason of the aforesaid breaches of contract, the plaintiffs suffered a further loss in that the Wayne Title and Trust Company has refused to turn over to the plaintiffs, Stanley J. Miller and Miriam L. Miller, his wife, the sum of One Thousand Twenty Eight and 12/100 ($1028.12) Dollars, which sum is claimed by subcontractors of the said defendant [Roberts]."

That action was so proceeded with in Chester County that Judge HARVEY, sitting as the trial court without a jury, made a decision in favor of the plaintiffs for $3,271.58, but, upon exceptions filed by the defendants, entered final judgment in favor of the Millers and against Inland Bonding Company and Roberts for the sum of $2,626.45, [$2,367.08 plus $259.37 interest], and sustained the exceptions of the defendants to the decision of the trial judge in so far as they related to the excess of the finding over and above the sum of $2,626.45. This amount, it is admitted was paid the Millers by the Bonding Company.

We do not have in this record sufficient evidence to enable us fully to understand the final calculation worked out by the Chester County Court. But as no appeal was taken by the Millers from the judgment so entered they are concluded by it.

The court below was of opinion that the judgment in the action brought by the Millers against the contractor and his surety in Chester County was res ad-

judicata as to their right to recover against Wayne in this action. In the opinion filed the court said: "It seems to me that this suit brought by Miller, the Plaintiff here, nonetheless contemplated the equitable rights of the Wayne Title and Trust Company, Defendant, and that it was res adjudicata as to the rights of the Wayne Title and Trust Company to bring any action against either the building company contractor or any party standing in pari materia with the contractor or with the Wayne Title and Trust Company. In the light of the authorities of our Supreme Court all of the issues between Miller and anybody else respecting the completion of this contract were, or ought to have been redressed in that action. (See Hochman v. Mortgage Fin. Corp., 289 Pa. 260, par. 6 [137 A. 252]; Wallace's Estate, 316 Pa. 148, par. 5 [174 A. 397]; First Trust Company v. Philadelphia Pure Rye Whiskey, 327 Pa. 145, par. 3 [192 A. 393] and is at least an estoppel by judgment,[3] if not res adjudicata, with respect to the same. Of course the Plaintiff had a right to limit his action in the Chester County case to such of the factors as he deemed redressably controlling, but the effect of his proceeding is not only to conclude his rights respecting those factors but also with respect to any other factors or elements of damage which he could have recovered in the Chester County suit. It seems, therefore, that this effort by the same plaintiff now against the Wayne Company is an effort to litigate at least a part of the claim which might have been litigated in Chester County."

We are in general accord with that holding. But we are also of opinion that the written documents in this case, the contracts, bonds, obligations, etc., all show clearly that Wayne was the agent and attorney in fact of the Millers for the custody, control and distribution

---

[3] See *Brobston v. Darby Borough*, 290 Pa. 331, 338-340, 138 A. 849, and cases cited therein.

of the funds deposited for this building project; that as such agent and attorney it was vested with broad discretionary powers looking to the effectuation of the plan; that the deposit made by the Millers with Wayne and their bond to it were for Wayne's security against loss from their insurances made at the Millers' request, and that in the circumstances present in this case Wayne was justified in applying the $1,027.82 remaining in its hands out of the deposit of $16,025 to paying the subcontractors the respective amounts due them by the contractor, Roberts, on their subcontracts, after it had been determined in their respective actions that their contracts had been performed in accordance with the specifications; and that as no part of said deposit remained in its hands, Wayne was entitled to a directed verdict in its favor.

The defendant Wayne took no appeal from the judgment entered in the court below. It cannot on this appeal by the plaintiffs raise the question of its right to a money judgment in its favor on its counterclaim.

The judgment is affirmed.