Commonwealth *v.* Willard, Appellant.

Argued April 11, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Samuel J. Feigus*, with him *Thomas A. Waggoner, Jr.*, for appellant.

*Fred L. Brothers*, District Attorney, with him *Thomas J. Kalman*, Assistant District Attorney, for appellee.

OPINION BY ROSS, J., September 28, 1955:

This appeal involves, inter alia, the question whether the evidence is sufficient to sustain the defendant-appellant's conviction of an attempt to commit abortion. In brief the issue is whether the acts committed by the appellant constituted an attempt within the meaning of the law or were merely preparatory to the commission of a crime. Since in our opinion the acts of the appellant did not constitute an attempt, it follows that the evidence was insufficient to sustain her conviction. Consequently, it will not be necessary to discuss or decide the other contentions advanced by her.

Marion Gannon, an employe of a detective firm, was called upon by the State Police to assist in ob-

taining evidence that defendant was performing abortions. Pursuant to the plan, she called defendant and made an appointment, but for some reason it was not kept. Another appointment was made and kept, the details of which appear as follows: Marion Gannon left Pittsburgh with several members of the State Police and proceeded to defendant's home. They arrived around 6 P.M. and Marion and one of the officers, Packler, the alleged paramour, were admitted to the home by defendant. They talked for a while about generalities and then Marion told defendant that she was two months pregnant and that since she was separated from her husband that she feared her mother's reaction. Marion actually was a married woman and at the time believed herself to be pregnant. Packler took $160.00 from his wallet, offering it to defendant who instructed him to give it to Marion. Marion took the money and she and defendant went into an adjoining bedroom. Packler went into the kitchen. Marion then handed the money to defendant who put it into one of the bureau drawers. Marion sat at the foot of the bed. A table leaf was lying at about the middle of the bed and slightly to her right. There was a utility pan with disinfectant on the floor. While Marion sat there, defendant instructed her to remove her underthings, but she did not do so. Defendant appeared through the door of the adjoining bathroom with several instruments, identified as a forceps, vaginal speculum and tweezers, covered by a towel. When she was the distance of the bed length away, Marion called for Packler, who ran in, identified himself, took the instruments from defendant and removed the money, which had previously been identified by its serial numbers, from the bureau drawer. Defendant was in due course tried and convicted of an attempt to commit abortion.

Section 718 of the Penal Code of 1939, P. L. 872, 18 P.S. Sec. 4718, under which the indictment was drawn, provides in part as follows: "Whoever, with intent to procure the miscarriage of any woman, unlawfully administers to her any poison, drug or substance, or unlawfully uses any instrument, or other means, with the like intent, is guilty of felony . . ." It is therefore unnecessary that an actual abortion occur, nor is it necessary that the woman actually be pregnant, so long as defendant believed her to be and that the instruments used, drugs administered, or other means used were believed to be sufficient to produce an abortion. See *Commonwealth v. Longwell,* 79 Pa. Superior Ct. 68. The statute therefore does not make the actual abortion the crime, but instead sets forth the acts which constitute an attempt to produce an abortion and makes this mere attempt the crime. *Com. v. Sierakowski,* 154 Pa. Superior Ct. 321, 35 A. 2d 786.

There is no disagreement here with the accepted definition of "attempt". The disagreement here, as in most cases, is in determining whether the acts of the defendant were sufficiently close or proximate to the completed crime so that it could be said that they were done in pursuance of the intent to commit the crime as distinguished from mere preparation to commit the crime. The distinction is difficult to make in many cases. It is our opinion that the acts here were interrupted in the preparatory stage and were not close enough to final consummation of the abortion to constitute an attempt under the law.

Attempt is defined in *Commonwealth v. Eagan,* 190 Pa. 10, 21, 42 A. 374 as: ". . . an overt act done in pursuance of an intent to do a specific thing, tending to the end but falling short of complete accomplishment of it. In law, the definition must have this further qualification, that the overt act must be sufficiently

proximate to the intended crime to form one of the natural series of acts which the intent requires for its full execution. *So long as the acts are confined to preparation only, and can be abandoned before any transgression of the law or of others' rights, they are within the sphere of intent and do not amount to attempts."* (Italics supplied.) The acts of defendant here in talking with Marion and Packler, in going into the bedroom with Marion, in accepting the money, in talking with Marion, in instructing her to remove her underthings, in preparing the instruments, were all preparatory. None of these acts forms a necessary part of the natural series of acts requisite to the consummation of the crime. Nor do all of them, taken together indicate that defendant had embarked upon the actual commission of the crime. We do not quarrel that the intent was sufficiently shown by the evidence, but that is all that is shown. The statute making the attempt a crime requires that the drugs be administered or the instruments or other means be "used". In *Commonwealth v. Longwell*, 79 Pa. Superior Ct. 68, supra, it was held that furnishing the drugs to the woman with instructions on how to use them with the intent to procure a miscarriage was a sufficient attempt. The reasoning there of course was that the defendant, although he did not personally administer the drugs, employed the woman as an instrumentality to do so, hence the proximate overt act was present. Defendant here did not touch the alleged victim, nor did she furnish her with anything. The consummation of the crime was to be the actual application of the instruments to the body of Marion with the intent to procure a miscarriage. Had the instruments actually been used for that purpose or drugs furnished or administered for that purpose, there is no doubt that defendant would have been guilty of an attempt to commit abor-

tion as defined by the statute, regardless of whether or not an actual miscarriage resulted. But it was necessary that something more than merely readying the instruments be done. Had these preparations been made prior to the arrival of Marion to defendant's home, the Commonwealth could not seriously contend that the attempt was consummated when the parties struck the bargain in the living room. The point we make is that the acts done do not reach far enough toward the accomplishment of the attempted abortion.

It cannot here be said that the acts which defendant did had reached the point where it was within her power to commit the crime unless she were prevented from so doing by some outside interference. In *Commonwealth v. Kelley,* 162 Pa. Superior Ct. 526, 58 A. 2d 375, at page 529 we stated: "To make an intentional act an indictable attempt it must go so far that it would result, or apparently result in the actual commission of the crime it was designed to effect, if not extrinsically hindered or frustrated by extraneous circumstances . . . There was no act moving directly toward the consummation of the offense after the preparation . . . or, as frequently expressed, there was no direct, ineffectual act done toward the consummation of the crime . . ."

The Gannon woman *fully clothed* was *sitting* on the edge of the bed. As appellant approached her and was about the width of the bed away carrying the instruments *wrapped* in a towel, Gannon called to Packler whose entrance into the room interrupted the proceedings.[1] How can it be said that under these facts there was an attempt? It must be borne in mind that here we had a willing victim. Abortion or attempt is not

[1] On direct examination, Gannon answered "yes" to the question "You knew the proceedings would stop any time you wanted to stop them, didn't you?"

a crime of violence; for its commission the "victim" not only has to assent but has to participate in it; has to cooperate in its commission, either actively or passively. There is no doubt that the appellant intended to commit a crime and had Gannon continued her apparent assent and had cooperated, that crime would have been committed.

We must remember that the criminal laws are to be strictly construed. Statutory Construction Act, Act of May 28, 1937, P. L. 1019, Art. IV, Sec. 58, 46 P.S. 558. The legislature saw fit in Section 718 of the Penal Code, 18 P.S. 4718, supra, to make certain acts, constituting an attempt to commit abortion, a crime. The acts are spelled out with clarity and the requisites necessary to be guilty of this statutory attempt are unambiguous. Admittedly, defendant did none of these acts, but merely was preparing to do them when she was interrupted and arrested. In essence then, the Commonwealth wants to extend this crime beyond the legislative limits and make the preparations equivalent to the attempt, in clear derogation of the settled principles relating to the crime of attempt. Admittedly, the Commonwealth claims that . defendant merely attempted this attempt to commit abortion. "There can be no attempt to commit a crime which is itself a mere attempt to do an act or to accomplish a result . . ." 16 C.J. Criminal Law Sec. 90, Page 111. We are not impressed with the argument that Section 1107 of the Penal Code, Act of June 24, 1939, P. L. 872, Section 1107, 18 P.S. 5107 allows this. That section merely allows a conviction of an attempt where the evidence at the trial for the completed crime indicates that only an attempt had been made. It does not however change the general rule of attempts that mere preparation to commit a crime as distinguished from the attempt itself, is not a crime. Whether it is called

an attempt to commit an attempt or whether it is said to be merely the preparations for the attempt, the result is the same and for the same reason: the acts are not considered of sufficient proximity to the completed crime to hold the defendant criminally responsible.

The Commonwealth and the lower court relied heavily upon *Commonwealth v. Johnson,* 312 Pa. 140, 167 A. 344. An examination indicates the distinction. There a licensed doctor was conducting his practice in a most unusual manner. He purported to cure persons without seeing them by means bordering on the supernatural. The prosecutor and another called upon him for the purpose of obtaining evidence and represented that they had a sister (purely fictitious) who was ill. The defendant rubbed an electrical device and told them that she was suffering from sarcoma, a blood clot on the brain, beef worms and anemia, but that her gall duct was in good condition. When the prosecutor suggested that he would bring the sister in to see the doctor, the doctor stated that it wasn't necessary as he had treated people successfully even as far away as Europe, India and Africa. The doctor offered to treat the sister for $65 per month for a period of from nine to twelve months. The prosecutor said he would return and did so in a few days, telling the doctor that they would take the treatment and paid him $25 on account in marked bills. The doctor was then arrested and convicted of an attempt to obtain money by false pretenses. He was of course not guilty of the completed crime of false pretenses because of the fact that the alleged victim, the prosecutor, was not deceived by his assertions. It was there held, however, that the evidence sustained the conviction of attempt. The distinction between that case and this is obvious. There it was not a question of proximity of the acts done, but a question of the factual failure to consum-

mate the crime because the victim was not deceived. The acts done were all that the defendant there could have done in final consummation of the completed crime. His failure was due to a factual impossibility, not as here, by an interruption in the midst of preparations.

In our opinion, the evidence in this case proves only that the appellant with intent to commit a crime made preparations therefor. Consequently, we must conclude that her conviction cannot be sustained.

Judgment reversed, the conviction is set aside, and appellant ordered discharged.

DISSENTING OPINION BY WRIGHT, J.:

In my opinion, there was sufficient evidence in this case to support the jury's verdict that appellant was guilty of an attempt to commit the offense described in Section 718 of the Penal Code. Her conduct went beyond mere preparation. I would affirm upon the opinion of Judge MORROW for the court en banc.

ERVIN, J. joins in this dissent.