Commonwealth *v.* McCloskey, Appellant.

Submitted March 17, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Francis P. Burns,* Assistant Public Defender, for appellant.

No appearance entered nor brief submitted for Commonwealth, appellee.

OPINION BY HOFFMAN, J., June 24, 1975:

Appellant contends that the Commonwealth's evidence at trial was insufficient to sustain his conviction for an attempted prison breach.[1]

---

1. Act of June 24, 1939, P.L. 872, §309; as amended, 1953, July 29, P.L. 1445, §1; 1961, July 12, P.L. 575, §1; former 18 P.S. §4309.

At the time of the alleged offense, appellant was serving a one- to three-years sentence for larceny in the Luzerne County Prison. At about 12:15 a.m., on December 26, 1972, James Larson, a Guard Supervisor at the prison, heard an alarm go off that indicated that someone was attempting an escape in the recreation area of the prison. The alarm was designed so that it could be heard in the prison office, but not in the courtyard. Larson immediately contacted Guards Szmulo and Banik. Initially, the guards checked the prison population, but found no one missing. The three men then conducted a search of the area where the alarm had been "tripped". Near the recreation yard between two wings of the prison, they found one piece of barbed wire that had been cut. In addition, Guard Szmulo found a laundry bag filled with civilian clothing. The bags are issued by the prison and are marked with a different number for each prisoner. A check revealed that the bag belonged to appellant.

At approximately 5:15 a.m., on December 26, the appellant voluntarily approached Larson. Appellant had spent that night on the nine p.m. to five a.m. shift at work in the boiler room, situated near the point where the alarm had been triggered. Appellant explained to Larson that "I was gonna make a break last night, but I changed my mind because I thought of my family, and I got scared of the consequences." Appellant testified at trial that he had become depressed prior to his decision to escape because he had been denied a Christmas furlough on December 24, 1972. His testimony at trial was consistent with Larson's version of the episode: ". . . in the yard, I realized that I had shamed my family enough, and I did not want to shame them any more . . . . So I went back to the boiler room and continued working."

On April 18, 1973, the grand jury returned an indictment charging the appellant with prison breach. Appellant went to trial on May 25, 1973, before a judge sitting without a jury and was found guilty of attempted prison

breach. Thereafter, appellant filed motions in arrest of judgment and for a new trial. Motions were heard in October, 1973, and denied on June 10, 1974, by the Luzerne County Court of Common Pleas en banc. This appeal followed.

A criminal attempt is defined as "an overt act done in pursuance of an intent to do a specific thing, tending to the end by falling short of complete accomplishment of it. In law, the definition must have this further qualification, that the overt act must be sufficiently proximate to the intended crime to form one of the natural series of acts which the intent requires for its full execution. *So long as the acts are confined to preparation only, and can be abandoned before any transgression of the law or of others' rights,* they are within the sphere of intent and do not amount to attempts." *Commonwealth v. Eagan,* 190 Pa. 10, 21-22 (1899) (Emphasis added). Thus, we must locate the line between an act which is mere preparation and one that is sufficiently proximate to be labelled an attempt.

A review of the cases on the law of attempt indicates that "[i]t is difficult to formulate any precise rule about how close the overt act must come to the accomplishment of the ultimate criminal result." 21 Am. Jur. 2d Criminal Law §111. "At what point does a potential criminal pass beyond preparation and become guilty of an attempt? Among the various tests suggested or applied are: the last act doctrine, holding that the defendant will not be guilty of an attempt until he does the last act necessary to the commission of a crime; Justice Holmes' dangerous-proximity test which focusses on both the dangerousness of the crime and the nearness to which the defendant has come to accomplishing it; and the movie camera test, which disregards the defendant's declarations of intent and instead focusses on the extent to which his acts demonstrate a specific intent or commitment to the criminal purpose." White, *The Inchoate Crimes Provisions of*

*the New Pennsylvania Penal Code,* 35 Pitt. L. Rev. 235, 237-38 (1973). Professor White suggests that the law in Pennsylvania approximates the last act doctrine, Id.

*Commonwealth v. Willard,* 179 Pa. Superior Ct. 368, 116 A. 2d 751 (1955), represents the broadest statement of what constitutes mere preparation. In *Willard,* this Court reversed the appellant's conviction for attempt to perform an abortion. The Commonwealth proved that the appellant accepted $160 from a police undercover agent, told her to undress and to lie on a bed equipped for the operation, left the room momentarily and returned with surgical instruments. At that point, the police agent and her "paramour", stationed in the next room, arrested the appellant. These acts were held not "sufficiently close or proximate to the completed crime so that it could be said that they were done in pursuance of the intent to commit the crime as distinguished from mere preparation to commit the crime." 179 Pa. Superior Ct. at 371, 116 A.2d at 752-753.[2]

In *Commonwealth v. Eagan,* supra, a seminal case on the law of attempts, the Court noted that ". . . the acts of the prisoner in going to [the victim's] place and watching his house, and even of preparing the rope to tie him, while undoubtedly done in pursuance of the intent, did not go beyond mere preparation, and had the intent been abandoned at this point, an indictment for an attempt to commit robbery or burglary could not have been sustained. But the moment a blow was struck on [the victim] the first step of the actual crime had been taken, and

---

2. Professor White further points out that the new Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, §1 et seq.; 18 Pa.C.S. §901 overrules the holding in *Willard.* Section 901(a) defines an attempt as "any act which constitutes a substantial step toward the commission of that crime." Section 901(c), however, provides that a crime may be "abandoned" as long as the abandonment was sufficient to prevent the commission of the crime and is complete and voluntary.

the intent was merged in the attempt. Subsequent abandonment might prevent the completion of the crime, but could not save from the consequences of acts done in the attempt." 190 Pa. at 22.

We recently dealt with an attempted prison breach in *Commonwealth v. Skipper*, 222 Pa. Superior Ct. 242, 294 A. 2d 780 (1972). In *Skipper*, appellant approached a fellow prisoner and asked him to procure hacksaw blades to be used in an escape attempt. The fellow prisoner, Commonwealth's witness at trial, worked in a bakery in a day release program and was to hide the blades in loaves of bread bound for the prison kitchen. Prison officials intercepted a note that the Commonwealth's witness attempted to pass to a third prisoner, one Schaeffer, who was to pay him for smuggling the blades into the prison. Subsequently, prison officials caught Schaeffer attempting to go over the prison wall. They found one of the smuggled blades on Schaeffer. A "shake-down" of the prison uncovered two additional blades in appellant's cell. We reversed appellant's conviction, noting that "discovery of the hacksaw blades in appellant's cell did no more than interrupt appellant's alleged plan in a preparatory stage. If the hacksaw blades were in fact procured by the appellant for use in an intended prison breach, appellant would have had sufficient time to withdraw before the commission of the offense." 222 Pa. Superior Ct. at 245, 294 A. 2d at 781.

In the instant case, the evidence on the record indicates that appellant scaled a fence within the prison walls that led to the recreation yard and then to the prison wall. Appellant testified that "I went over the fence. I was in the yard.

"Q. Well, when you say you went over the fence, this is still in the prison?

"A. This is still in the prison, yes, sir. . ."

The Commonwealth's evidence supports the appellant's claim that he went only as far as the yard before giving

up his plan to escape. Guard Szmulo testified that "We checked the trip wire. We couldn't find nothing broke. And then when I got to the gate that goes into the recreation yard between center and left wing, I found one barbed wire was cut." Thus appellant was still within the prison, still only contemplating a prison breach, and not yet attempting the act. He was thus in a position to abandon the criminal offense of attempted prison breach voluntarily, thereby exonerating himself from criminal responsibility.

Judgment of sentence is vacated and appellant ordered discharged on the conviction of attempted prison breach.

WATKINS, P. J., and JACOBS and SPAETH, JJ., join in this opinion.

VAN DER VOORT, J., concurs in the result.

----

CONCURRING OPINION BY CERCONE, J.:

I agree with the majority that appellant's conviction for attempted prison breach should not be permitted to stand. However, I disagree with the basis for the majority's conclusion, that the acts done by appellant prior to his decision to abandon his escape were insufficient to constitute an attempt. I would have found little difficulty, for instance, in affirming appellant's conviction had he been apprehended by the guards immediately after he had snipped the barbed wire and crossed the inner fence. To hold otherwise is to require that prisoners must literally be plucked from the prison wall before their conduct may be characterized as attempted prison breach.

I respectfully suggest that the majority has fallen into a trap peculiarly common to the law of attempts. As Professor Perkins has stated in discussing when conduct ceases to be merely preparatory and becomes perpetration:

"The preparatory-perpetrating dichotomy is useful in discussing situations of a rather general nature, but the actual dividing line between the two is shadowy

> in the extreme. There is reason to believe that *in close cases the decision is based upon other considerations* and that the label attached is that appropriate to the conclusion reached—after it is reached." R. Perkins, Criminal Law 561 (2d ed. 1969). [Emphasis added.]

The "other consideration" which has influenced the majority herein is appellant's voluntary abandonment of his escape plan. In my opinion, appellant's abandonment of his plan is a sufficient defense to the crime of attempted prison breach and should be recognized as such.

As a practical matter, it has long been recognized that plans voluntarily abandoned are less likely to be found to be attempts than are plans carried to the same point, but interrupted by the apprehension of the perpetrators. Unfortunately, in jurisdictions where voluntary abandonment or renunciation of a criminal purpose has not been recognized as an affirmative defense, the courts have sought to give effect to the defendant's abandonment, *sub silentio,* by characterizing his conduct as "preparatory." See Model Penal Code §501, comment 19 at p. 70 (Tent. Draft No. 10, 1958). That is precisely the error which the majority has made in the instant case. The difficulty with this position is that, with regard to the preparation-perpetration dichotomy, it breeds results superficially inconsistent. If voluntary abandonment is to be given effect in attempt cases, it should not be done covertly.

For some time the trend in the law has been to recognize voluntary abandonment as an affirmative and complete defense to a charge of attempt, despite the exhortations to the contrary by some commentators.[1] *Id.* And, in

---

1. Professor Perkins has said:

"A criminal attempt is a 'complete offense' in the sense that one who has carried a criminal effort to such a point that it is punishable can no more wipe out his criminal guilt by abandonment of his plan than a thief can obliterate the larceny by restora-

following this trend our legislature substantially adopted section 5.01 of the Model Penal Code in drafting the attempt provisions in our recently enacted Crimes Code.[2] Our Code now recognizes that abandonment under circumstances indicating voluntariness, is a complete defense to a charge of attempt. Appellant, however, was charged under our old Penal Code which did not speak to whether voluntary abandonment was a defense to a charge of attempt.[3]

In one of the first cases ever decided by this court, we stated:

"In the case under consideration, Johanna Tadrick left her mother's house, intending to steal the prosecutor's money, entered the house of the prosecutor and seated herself on the bed where she knew the money was concealed. Nothing remained to be done save to insert her hand and secure the money. Each of the three acts mentioned was intended to be, and actually was, a step towards the consummation of her felonious purpose. Taken together and in connection with the uninterrupted intent existing in her mind, we are compelled to hold that they constituted an attempt at larceny which would have been punishable had she gone no further. If the offense of larceny were not completed, we must assume, from the evidence, that

tion of the stolen chattel." Perkins, Criminal Attempt and Related Problems, 2 U.S.L.A. L. Rev. 319, 354 (1955). Professors LaFave and Scott, however, have found that "the arguments in favor of recognizing voluntary abandonment as a defense to a charge of attempt are more persuasive than the arguments against the defense." W. LaFave & A. Scott, Criminal Law 450 (1972).

2. Act of December 6, 1972, P.L. 1482, No. 334, §1 et seq., 18 Pa.C.S. §901 (1973). See note 2 of the majority opinion.

3. The Act of June 24, 1939, P.L. 872, § 1107, 18 P.S. § 5707, provided that the jury could not acquit if it found that the defendant, "did not complete the offense charged, but was guilty only of an attempt to commit that crime. . . ." The statute did not define an attempt nor list any affirmative defenses thereto.

the failure was not owing to a change of purpose, which of course would leave her guiltless, but to extraneous circumstances, over which she had no control. An overt act is one which manifests an intention to commit the crime: Bouvier's L.D. 267. It need not be the last proximate act prior to the consummation of the attempted crime, if the latter be a felony: Uhl v. Commonwealth, 6 Grattan, 706; 1 Bish. Crim. Law, sec. 764." *Commonwealth v. Tadrick,* 1 Pa. Superior Ct. 555, 566 (1896) [Emphasis added.]

It is clear that this court long ago perceived voluntary abandonment to be an affirmative defense to the crime of attempt; and, I have not been referred to any Pennsylvania authority which persuades me that this court's implicit conclusion was then erroneous, nor any authority to indicate that this court's observation in *Tadrick* has not withstood the test of time. On the contrary, as aforementioned, voluntary abandonment is now recognized in Pennsylvania as a statutory defense to an attempt charge.

Sound policy reasons also underlie the recognition of voluntary abandonment as an affirmative defense. As the drafters of the Model Penal Code have pointed out, the defense of complete and permanent abandonment should be allowed because voluntary abandonment negates the conclusion that the accused continues to be dangerous; and, the knowledge that voluntary abandonment exonerates one from criminal liability provides a motive to desist prior to completion of the crime. Model Penal Code §5.01, comment 19 at pp. 71-72 (Tent. Draft No. 10, 1958). See also Wechsler, Jones & Korn, The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation and Conspiracy, 61 Colum. L. Rev. 571, 617 (1961).[4]

---

4. The drafters of the Code also considered simply recognizing voluntary abandonment as an act in mitigation of the crime of attempt. However, they concluded that complete exoneration

Thus, I have concluded that the law in Pennsylvania recognized voluntary abandonment as an affirmative defense even prior to the adoption of the Crimes Code. In any event, the trend in the United States is so profoundly in favor of such a defense that we should have recognized its existence in the instant case even had the Crimes Code not been enacted. Furthermore, I think it would be erroneous to construe the attempts provision of the Crimes Code as somehow implying that the law was otherwise prior to the Code's adoption. On the contrary, I think the adoption of that provision only fortifies the conclusion I have reached herein.

Therefore, I would not rest the decision of this case on the basis that appellant's acts prior to renunciation of his criminal purpose were merely preparatory; for, as has my brother, Judge Price, I have concluded that appellant had clearly gone further than preparation. Rather, I would rest the instant decision on appellant's unequivocal and undisputedly voluntary abandonment of his criminal purpose. Thus, I only concur in the result reached by the majority herein.

Spaeth, J., joins in this opinion.

———

Dissenting Opinion by Price, J.:

I cannot agree with the majority's conclusion that appellant's acts were confined to preparation and contemplation, therefore, I must respectfully dissent.

The facts are fully set forth in the majority opinion and need not be repeated. The evidence is sufficient to establish that appellant went over a forbidden fence, albeit still within the physical confines of the prison, cut a piece of barbed wire and tripped the alarm system designed and equipped to alert the authorities to attempts

would offer the only meaningful inducement to desist, especially in light of the already substantially diminished penalties for attempt vis a vis those provided for the successful completion of the criminal act.

at prison breach. Any one of these three acts would, in my opinion, take appellant beyond preparation and contemplation. Accordingly, there is more than sufficient evidence to sustain appellant's conviction.

I would affirm the judgment of sentence.