375 A.2d 79

**COMMONWEALTH of Pennsylvania**

v.

**Larry Ronald HOWARD, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 8, 1976.

Decided June 29, 1977.

Calvin S. Drayer, Jr., Assistant Public Defender, Norristown, for appellant.

Bert M. Goodman, Assistant District Attorney, and William T. Nicholas, District Attorney, Norristown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

JACOBS, Judge:

Appellant and a co-defendant were convicted of attempted escape [1] from the State Correctional Institution at Graterford. Following the jury trial, post-trial motions were denied. This appeal followed, in which four issues are raised. Since we find these issues are without merit, we affirm.

The facts giving rise to the charges against appellant were summarized by the trial court as follows:

" . . . At about 7:00 A.M. on August 26, 1975, Lieutenant Dietz was walking through the kitchen service corridor of the State Correctional Institution at Graterford when he observed two inmates in the courtyard between 'A' and 'B' Blocks. Both were in a 'hunched' position. Dietz recognized one of the men as Howard. Inmates are not permitted in this area. Dietz alerted Captain Spaid, who immediately proceeded into the courtyard where he saw two figures dressed in inmate garb running alongside of 'A' Block. It was a foggy morning, and the men passed beyond his vision. However, as he continued in pursuit, he observed a makeshift rope of bedding and clothing leading to a cell window on the second level of 'A' Block, and saw a figure in the act of scrambling through the window. The cell was number 352. It was Howard's cell, and he was its only occupant when it was promptly searched. One of the window bars had been cut, one window was missing and another held in place with fresh putty covered with wet paint. Two ice cream cups, one containing paint and one containing fresh putty, were found under Howard's bed. A pair of shoes found in the cell were wet and covered with grass.

"A general search of the cells on 'A' Block was ordered. Cell 329 was Shoats' cell and he was its sole occupant when officers arrived to inspect it. The inspection revealed that the cell window bars had been cut, and that the windows could be removed by tapping them. The putty holding them in place was fresh. On removal of the

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. §§ 901 *et seq.*, § 5121 (1973).

windows, there was sufficient space for a man to exit. A third cell on Block 'A' was found to have its window bars cut, but an institution wide search failed to disclose any other such discrepancies. However, a search of the yard area revealed a hook attached to the outside wall between Towers 4 and 5, with about 8 feet of homemade rope fashioned from bed sheets attached to it. Directly beneath this was 40 feet of similar rope in a heap. The wall is 40 feet high."

Lower Court Opinion at 1 & 2 (footnote omitted).

The first argument made by appellant is that he was denied equal protection of the law by virtue of the fact that the enabling legislation[2] pursuant to which the Bureau of Corrections formulates regulations, fails to provide sufficient standards and guidelines for the promulgation of such regulations, and thus is an improper delegation of legislative authority. Pursuant to this enabling legislation, the Bureau of Corrections has adopted regulations and by-laws governing operation of the various state correctional facilities. More specifically, regulations have been adopted which set forth the procedure to be followed in prosecuting an inmate for criminal acts committed while under official detention. 37 Pa.Code §§ 95.1 *et seq.*

This procedure sets forth two classes of criminal offenses. Serious felonies, including escape, are considered Class One offenses, less serious crimes are considered Class Two offenses. In the event there is an allegation that an inmate has committed a Class One offense, the superintendent of the institution is *required* to notify the state police. The state police take over the investigation at that point and make the decision of whether or not to prosecute. In the case of an allegation that an inmate has committed a Class Two offense, however, the prison authorities have the discre-

2. Act of April 9, 1929, P.L. 177, art. IX, § 911, added 1953, July 29, P.L. 1428, § 1, as amended October 22, 1959, P.L. 1356, § 2, 71 P.S. § 301 *et seq.* (1962). Section 306(d) of the enabling statute gives the Bureau of Corrections the power "[s]ubject to the approval of the Department of Justice, to make such by-laws, rules and regulations for the management of the institution."

tion to deal with the offense administratively, without a formal prosecution.

■ It is clear that in delegating fact-finding and rule-making authority to an administrative agency, the legislature must provide clear guidelines and limitations pursuant to which the authority is exercised. *Commonwealth v. Tarabilda,* 222 Pa.Super. 237, 294 A.2d 830 (1972), *allocatur refused,* 226 Pa.Super. xxxi (1973). Appellant argues that both the prison officials and the Bureau of Corrections are left with too much discretion in determining what criminal acts by an inmate result in formal prosecution. Whatever the merits of this contention with respect to other crimes, we find that in the particular circumstances of the case at bar, appellant has no basis to complain. As to the crime of escape, with which appellant was charged, the prison officials had no discretion whatsoever in processing the violation, since it is a Class One offense. Furthermore, the Bureau of Corrections had little or no discretion in determining what class offense escape should be. The legislature has itself made the determination that escape from official detention under the circumstances of this case is a felony, a serious crime.[3] Thus, unlike other offenses under the Crimes Code, there was no need for the Bureau of Corrections to weigh the policy considerations of prosecuting or not prosecuting for offenses committed while the actor was officially detained, since the legislature had already made that decision. We do not believe there is any improper delegation of authority to the Bureau of Corrections to determine prosecution procedures in the case of escapes and attempted escapes.

■ Appellant's second argument is that the indictment was insufficient to apprise him of the charge against him, in that, in appellant's words, the indictment "parroted" the language of the statute which makes escape a crime. The lower court refused to consider this matter post-trial since appellant had not advanced this theory in his pre-trial mo-

3. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 5121 (1973).

tion to quash the indictment. Even if the matter had been properly raised, appellant's contention would nonetheless fail. It is clearly the law of this Commonwealth that indictments drawn in the language of the criminal statute are legally sufficient. Act of March 31, 1860, P.L. 427, § 11, 19 P.S. § 261 (1964); *see also, Commonwealth v. Bradshaw,* 238 Pa.Super. 22, 364 A.2d 702 (1975).

 Appellant's third assignment of error is that the lower court committed an abuse of discretion in refusing to grant defense counsel the right to conduct individual voir dire of prospective jurors. Initially it should be pointed out that individual voir dire is *mandated* in all capital cases in this Commonwealth. Pa.R.Crim.P. 1106(e). In non-capital cases, it is a matter resting within the sound discretion of the trial judge, *Commonwealth v. Herron,* 243 Pa.Super. 319, 365 A.2d 871 (1976). In the case at bar, the trial judge conducted collective voir dire, at the conclusion of which counsel was asked if there were any further questions he wished to have put to the jury panel. No additional questions were requested. The bulk of authority cited by appellant, including the *American Bar Association Standards Relating To Fair Trial And Free Press,* deals with cases involving substantial possibility of prejudice among prospective jurors as a result of pre-trial publicity. That is not the situation in the case at bar. Appellant asserts, however, that there was a substantial likelihood of prejudice because appellant is black, and all the prospective jurors were white, and because the crime charged was escape, the jury would necessarily have knowledge of appellant's prior convictions. We do not believe that either of these factors creates such a likelihood of prejudice so as to render the trial judge's decision to conduct collective voir dire an abuse of discretion.

The fourth and final argument raised by appellant is that the evidence was insufficient to sustain the conviction. Appellant relies primarily on this Court's decision in *Commonwealth v. McCloskey,* 234 Pa.Super. 577, 341 A.2d 500 (1975). We believe that case is distinguishable from the one at bar, and hold that the evidence was sufficient to sustain the conviction of attempted escape.

In *McCloskey,* an inmate had scaled a fence inside the main prison walls, and had cut through some barbed wire when he changed his mind about escaping, and voluntarily returned to his job in the prison boiler room. Since that incident occurred prior to the effective date of the new Crimes Code, McCloskey was charged with prison breach under § 4309 of the old Penal Code. He was convicted of attempted prison breach. We reversed,[4] saying that the evidence was insufficient to show that McCloskey had progressed beyond the stage of mere preparation to the point where his actions constituted an attempt. In reaching that decision, Judge HOFFMAN, writing for the majority, reviewed various common law tests for determining when an act crossed the line between preparation and attempt. That analysis, coupled with the fact that McCloskey had voluntarily abandoned his escape plan,[5] led this Court to reverse the conviction.

The present case is governed by the new Crimes Code, in which the legislature has provided a single test to be applied in determining whether or not an accused's actions amounted to an attempt. That standard appears at § 901(a) of the Crimes Code:

"A person commits an .attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime."

Section 901(c) goes on to provide that voluntary renunciation of the criminal purpose is a defense to a charge of attempt.

In the case at bar, the evidence clearly shows that appellant had made a "substantial step" towards the commission of the intended crime, escape. Furthermore, there is no evidence of voluntary renunciation, every indication

---

4. Judge CERCONE filed a concurring opinion in which Judge SPAETH joined. Judge PRICE filed a dissenting opinion, and Judge VAN der VOORT concurred in the result.

5. The defense of voluntary abandonment of the criminal purpose was not expressly provided for by the old Penal Code, although as Judge CERCONE indicated in his Concurring Opinion in *McCloskey,* that defense had received *de facto* recognition in prior cases.

being that appellant abandoned his attempt only after being discovered by one of the prison guards.

Judgment of sentence affirmed.

SPAETH, J., concurs in the result.