## Commonwealth v. Radogna

*Anthony S. Blasco, Assistant District Attorney,* for Commonwealth.
*Philip D. Lauer,* for defendant.

WILLIAMS, *J.*, April 27, 1981—The criminal episode which brings defendant, John V. Radogna, before the court occurred on May 1 and 2, 1980. During this period defendant was being transported from Portland, Oregon, to Northampton

County, Pa., by law enforcement officials. Approximately six months earlier defendant had managed to escape while being transported to this county from the Graterford Correctional Facility in Pennsylvania. While in transport from Oregon, defendant was suspected of possessing a concealed weapon and, upon arrival in Pennsylvania, a four-inch stainless steel knife was recovered from defendant's rectum.

As a result of this incident, defendant was charged with possessing the instruments of a crime, possessing a prohibitive offensive weapon, possessing implements for escape, and criminal attempt to escape. After a bench trial before Williams, Jr., P.J., on October 23, 1980, defendant was acquitted of possessing a prohibitive offensive weapon and convicted of the remaining charges. The matter is now before the court en banc* on defendant's motion for a new trial and in arrest of judgment.

Initially, defendant contends the evidence was insufficient to sustain the charges on which he was convicted. With respect to the charge of possessing instruments of a crime, defendant contends that the Commonwealth failed to establish the elements of possession and intent. It is defendant's position that, because the instrument was so substantially concealed as to be immediately inaccessible to defendant, he cannot be said to be in possession of the instrument and he cannot have had a reasonably current intent to use the instrument criminally.

Section 907 of the Crimes Code, 18 Pa.C.S.A. §907, defines the offense of possessing instruments

---

*The court en banc is composed of President Judge Alfred T. Williams, Jr., and Judges Michael V. Franciosa and Richard D. Grifo.

of crime. Under subsection (a), it is illegal for a person to possess any instrument of crime with the intent to employ it criminally. Further, subsection (c)(2) defines an instrument of crime as "anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have."

In the circumstances of this case, it is clear that defendant did unlawfully possess an instrument of crime. From Com. v. Allen, 466 Pa. 474, 353 A. 2d 452 (1976), it is clear that a knife may properly be termed a device commonly used for criminal purposes. Further, there was sufficient evidence presented for the trial court to conclude the circumstances of defendant's possession were not manifestly appropriate for the lawful uses the knife may have had. Finally, though we realize that criminal intent cannot be inferred from mere possession, we conclude that the circumstances of defendant's possession of the knife were sufficient for the trial court to find defendant's criminal intent beyond a reasonable doubt: Com. v. Moore, 476 Pa. 19, 381 A. 2d 845 (1978).

With respect to the charge of possessing a weapon or implement for escape, 18 Pa.C.S.A. §5122, it is defendant's contention that he was not an inmate at the time in question. Defendant concedes that he was an inmate at the State Correctional Institution at Graterford at the time of his escape from that institution in September of 1979. Further, it is clear that at the time in question defendant was being returned to a state correctional facility. Under the circumstances of this case, the fair import of the term "inmate" includes defendant while in transport to a correctional facility: 18 Pa.C.S.A. §105. This interpretation furthers the general purposes of the Crimes Code to forbid and prevent conduct that

unjustifiably inflicts or threatens substantial harm to individuals, to safeguard conduct that is without fault from condemnation and to give fair warning of the nature of the conduct declared to constitute an offense: 18 Pa.C.S.A. § 104.

With respect to the crime of criminal attempt to escape, it is defendant's position that he did not commit any act which constituted a substantial step toward the commission of escape. In support of his position, defendant cites a number of cases interpreting prior law.

The Crimes Code definition of criminal attempt represents a change from prior law. Under section 901(a), "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." Prior to the adoption of the Crimes Code, a criminal attempt was defined as "'an overt act done in pursuance of an intent to do a specific thing, tending to the end by falling short of complete accomplishment of it. . . . So long as the acts are confined to preparation only, and can be abandoned before any transgression of the law or others' rights, they are within the sphere of intent and do not amount to attempts.'" Com. v. McCloskey, 234 Pa. Superior Ct. 577, 580, 341 A. 2d 500, 501 (1975), quoting Com. v. Eagan, 190 Pa. 10, 42 Atl. 374 (1899). The substantial step test of the new Crimes Code has been held to broaden the scope of attempt liability because it concentrates on the acts defendant has done and not on the acts remaining to be done before the actual commission of the crime: Com. v. Gilliam, 273 Pa. Superior Ct. 586, 417 A. 2d 1203 (1980).

The circumstances of this case demonstrate that defendant had clearly taken a substantial step to-

ward committing an escape. Defendant not only concealed a knife in his body cavity but sought to be left alone in a bathroom facility at one point during the transport. Importantly, defendant chose not to use the bathroom facility when it was determined that he would not be able to utilize it alone. Under the standard established by the Crimes Code, it is of no consequence that defendant did not succeed in achieving an actual state of flight: Com. v. Gilliam, supra.

Defendant's next contention is that the trial court erred in refusing to suppress the evidence retrieved from defendant's rectum. Defendant argues the X-ray examination and resulting removal from defendant of the knife was unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution and Pa. Const., Art. I, §8.

Initially, we note our agreement with the trial court's determination that the X-ray examination was not an intrusion into the human body and was, therefore, free of the constraints imposed by the Fourth Amendment. Assuming, however, this X-ray examination constitutes a search, we find the search reasonable under the circumstances and in no way a violation of defendant's constitutional rights.

It is clear that convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison: Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed. 2d 629 (1977). However, it is not as clear what Fourth Amendment protections convicted prisoners retain. See Lanza v. New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed. 2d 384 (1962), and Stroud v. United States, 251 U.S.

15, 40 S.Ct. 50, 64 L.Ed. 103 (1919). In Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed. 2d 447 (1979), the Supreme Court held that the Fourth Amendment rights of pre-trial detainees was not violated by a strip search which included a visual body cavity search of inmates after every contact visit with non-prison personnel. The court said that the Fourth Amendment only prohibits unreasonable searches and that, under the circumstances, the searches in question were reasonable, though probable cause was not found.

The test of reasonableness under the Fourth Amendment involves a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts are required to consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted: Bell v. Wolfish, supra. In this case the X-ray examination was limited to the area in which the evidence was thought to be located and was conducted by a duly licensed physician. Further, the search was conducted in a hospital and not in a public restroom at an airport facility. Finally, the officers were justified in conducting the search because they were informed of the hidden weapon and were returning a convicted defendant to a detention facility. Under these circumstances, a finding of probable cause is not required because a detention facility is a unique place fraught with serious security dangers: Bell v. Wolfish, supra. From the circumstances, it is clear that the search was not unreasonable and did not violate defendant's constitutional rights.

Finally, defendant contends the trial court erred in refusing defendant's motion for change of venue.

In this regard we adopt the statement of reasons filed by the court on August 21, 1980. On the basis of the statement of reasons, we find that the record fails to establish the presence of any inherently prejudicial pre-trial publicity and, therefore, deny defendant's motion in this regard.

In light of the foregoing, we enter the following

## ORDER

And now, April 27, 1981, upon consideration of the law and facts of this case, defendant's motion for a new trial and in arrest of judgment is denied and dismissed.

The Northampton County Probation Department is directed to conduct a presentence investigation and report its findings to the court.